## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF MICHIGAN

MALIBU MEDIA, LLC,                    )    Case No. 1:12-cv-00617-RJJ
                                      )    Hon. Robert J. Jonker
             Plaintiff,               )
      vs.                             )
                                      )
JEFFREY ROY,                          )
                                      )
             Defendant.               )
                                      )

---

PAUL J. NICOLLETTI  (P-44419)          JOHN T. HERMANN  (P-52858)
Attorney for Plaintiff                 Attorney for Defendant
36880 Woodward Ave, Suite 100          2684 West Eleven Mile Road
Bloomfield Hills, MI 48304             Berkley, MI 48072
(248) 203-7801                         (248) 591-9291

---

### DEFENDANT'S MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM

Defendant, JEFFREY ROY, moves this court pursuant to Fed. R. Civ. P. 12 (b)(6) to dismiss Plaintiff's Complaint for failure to state a claim upon which relief may be granted. In accordance with LR 7.1 and with the order of this court, counsel for Defendant asserts that he contacted Plaintiff's counsel regarding the issue raised in this motion, but did not obtain concurrence in the relief sought.


Dated:  November 14, 2012              s/ John T. Hermann
                                       JOHN T. HERMANN (P52858)
                                       Attorney for Defendant
                                       2684 West Eleven Mile Road
                                       Berkley, MI 48072
                                       (248) 591-9291

# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF MICHIGAN

MALIBU MEDIA, LLC,                     )    Case No. 1:12-cv-00617-RJJ
                                       )    Hon. Robert J. Jonker
         Plaintiff,                )
    vs.                            )
                                       )
JEFFREY ROY,                           )
                                       )
         Defendant.                )

---

PAUL J. NICOLLETTI  (P-44419)          JOHN T. HERMANN  (P-52858)
Attorney for Plaintiff                 Attorney for Defendant
36880 Woodward Ave, Suite 100          2684 West Eleven Mile Road
Bloomfield Hills, MI 48304             Berkley, MI 48072
(248) 203-7801                         (248) 591-9291

---

## BRIEF IN SUPPORT DEFENDANT'S MOTION TO DISMISS FOR FAULURE TO STATE A CLAIM UPON WHICH RELIEF MAY BE GRANTED

Dated:  November 14, 2012                  s/ John T. Hermann
                                        _____
                                        JOHN T. HERMANN (P52858)
                                        Attorney for Defendant
                                        2684 West Eleven Mile Road
                                        Berkley, MI 48072
                                        (248) 591-9291

## <u>TABLE OF CONTENTS</u>

INDEX OF AUTHORITIES.............................................................................................iii-v

STATEMENT OF ISSUES PRESENTED................................................................. vi

STATEMENT OF CONTROLLING AUTHORITY ................................................ vii

I.      INTRODUCTION ........................................................................................... 1

II.     STANDARD OF REVIEW ............................................................................ 3

III.    LAW AND ARGUMENT ............................................................................. 3

        A.     Plaintiff Has Not Pled Sufficient Facts To Allow the Court to Draw The Reasonable Inference That the Defendant Is Liable for Copyright Infringement .......................................................... 4

        B.     Plaintiff Fails To Allege Facts That Defendant Committed A Volitional Act of Copyright Infringement ................................... 9

        C.     Plaintiff's Supporting Declaration Evidence Is Inaccurate Misleading and Fails to Link Defendant to the Alleged Acts of Infringement................................................................................. 8

        D.     Counsel In Identical Cases Have Admitted That There Exists A Significant Risk of Misidentification ....................................... 15

        E.     Plaintiff's Allegations Are Likely Unsupportable Under Rule 11 .......... 17

V.      CONCLUSION ........................................................................................... 19

## INDEX OF AUTHORITIES

## CASES

AF Holdings LLC v.Does 1-96,
2011 U.S. Dist. LEXIS 134655, (N.D. Cal. Nov. 22, 2011) .................................................. 15, 16

Ashcroft v. Iqbal, 556 U.S. 662, (2009) ............................................................................. 3, 4, 19

Bell Atl. Corp., v. Twombly, 550 U.S. 544, 555 (2007) .......................................................... 3, 19

Boy Racer, Inc. v. Doe, 2011 U.S. Dist. LEXIS 103550 (N.D. Cal. Sept. 13, 2011) .................. 16

Bubble Gum Productions, LLC v. Does 1-80, 2012 WL 2953309 (S.D.Fla. Jul. 19, 2012) ......... 5

Cartoon Network LP v. CSC Holdings, Inc, 536 F. 3d 121 (2nd Cir. 2008) .................................. 9

Cory v. Allstate Ins., 583 F.3d 1240 (10th Cir. 2009) ............................................................ 1, 2

Digital Sin, Inc. v. Does 1-176, 2012 U.S. Dist. LEXIS 10803, (S.D.N.Y. 2012) ................. 6, 15

Digital Sin, Inc. v. Does 1-5698, 2011 WL 5362068, (N.D. Cal. Nov. 4, 2011) ...................... 7, 8

Discount Video Center v. Does 1-29,
2012 U.S. Dist. LEXIS 112518 (D. Mass, Aug. 10, 2012) ....................................................... 18

Effkay Enters. v. J.H. Cleaners, Inc., 2008 U.S. Dist. LEXIS 46127 (D. Colo. June 5, 2008) ..... 3

Feist Pubs., Inc., v. Rural Tel. Serv. Co., Inc., 499 U.S. 340 (1991)........................................... 4

Field v. Google, Inc., 412 F. Supp. 2d 1106 (D. Nev. 2006) ....................................................... 9

Gallagher v. Shelton, 587 F.3d 1063 (10th Cir. 2009) ............................................................... 3

Grynberg v. Koch Gateway Pipeline Co., 390 F.3d 1276 (10th Cir. 2004) ................................ 14

Hard Drive Productions, Inc. v. Does 1-130, 2011 WL 553960, (N.D. Cal. 2011) ............... 7, 14

Hard Drive Prod's. v. Doe, N.D. Cal. Case No. 22-1566 ............................................... 17

Hard Drive Productions v. Does 1-48,
2012 U.S. Dist. LEXIS 82927, (N.D. Ill. June 14, 2012) ........................................... 18

In re BitTorrent Adult Film Copyright Infringement Cases,
2012 U.S. Dist. LEXIS 61447 (E.D.N.Y. 2012) ....................................... 2, 3, 5, 6, 11, 12, 14, 15

In re: Ingenuity 13 LLC, No. 2:11-mc- 0084-JAM-DAD (E.D. Cal. 2012) ................................ 7

In re Ingenuity 13 LLC, 2012 U.S. Dist. LEXIS 38647 (E.D. Cal. Mar. 20, 2012) .................... 7

Khalik v. United Air Lines, 2010 U.S. Dist. LEXIS 129598 (D. Colo. Dec. 7, 2010) ................. 3

Kirch v. Embarq Mgmt. Co., 2011 U.S. Dist. LEXIS 92701 *10 (D. Kan. Aug. 19, 2011) ... 5, 11

LVRC Holdings v. Brekka, 581 F.3rd 1127, 1130 (9th Cir. 2009) ............................................. 5

Malibu Media, LLC v. Felitti: 2012 U.S. Dist. LEXIS 103393, (D. Colo. July 25, 2012) .......... 8

Malibu Media, LLC v. John Does 1-11,
2012 U.S. Dist. LEXIS 94648 (D.D.C. July 10, 2012) ............................................. 15

Malibu Media, LLC v. Doe, 2012 U.S. Dist. LEXIS 110668, (M.D. Fla. Aug. 7, 2012) .......... 18

Metso Minerals, Inc. v. Powerscreen Int'l Distrib. Ltd.,
833 F. Supp. 2d 282 (E.D.N.Y. 2011) ....................................................................... 10

Next Phase Distrib., Inc. v. Does 1-27,
2012 U.S. Dist. LEXIS 107648, (S.D.N.Y. July 31, 2012) ....................................... 6

Pacific Century Intern. Ltd., v. Does 1-101,
2011 U.S. Dist. LEXIS 124518, (N.D. Cal. 2011) .......................................................... 7, 15, 16

Patterson v. Dex Media, Inc., 2012 U.S. Dist. LEXIS 124067 (D. Colo. Aug. 31, 2012) ............ 4

Religious Tech. Ctr v. Netcom On-Line Commc'n Servs., Inc.,
907 F. Supp. 1361, (N.D. Cal. 1995) ........................................................................... 9

SBO Pictures, Inc. v. Does 1-3036, 2011 WL 6002620, (N.D. Cal. 2011) ........................... 6, 14

St. Louis Baptist Temple v. FDIC, 605 F. 2d 1169 (10th Cir. 1979) ........................................ 17

Third Degree Films v. Doe, 2011 U.S. Dist. LEXIS 128030, (N.D. Cal. 2011) ........................ 7

VPR Internationale v. Does 1-1017, 2011 U.S. Dist. LEXIS 64656 (C.D. Ill. Apr. 29, 2011) ..... 7

Zero Tolerance Entertainment, Inc. v. Does 1-45, 2012 WL 2044593 (S.D.N.Y. Jun. 6, 2012)  14

## **STATUTES**

17 U.S.C. § 106.................................................................................................................. 4, 9

## **COURT RULES**

Fed R. Civ. P. 8(a)(2)..................................................................................................... 3, 4, 8, 9
Fed. R. Civ. P. 12(b)(6)................................................................................................... v, 13, 18
Fed. R. Civ. P. 11 ............................................................................................................ 17, 18

## **MISCELLANEOUS**

Charles Alan Wright & Arthur R. Miller, 5A *Fed. Prac. & Proc. Civ.* § 1335 (3d ed.) ............ 18

<u>**STATEMENT OF ISSUES PRESENTED**</u>

I.     HAS PLAINTIFF PLED SUFFICIENT FACTS TO ALLOW THE COURT TO DRAW THE REASONABLE INFERENCE THAT THE DEFENDANT IS LIABLE FOR COPYRIGHT INFRINGEMENT?

|  |  |
|---|---|
| Plaintiff Answers: | Yes. |
| Defendant Answers: | No. |
| Court Should Answer: | No. |

II.    DOES PLAINTIFF'S COMPLAINT AND SUPPORTING DECLARATION LINK DEFENDANT TO THE ALLEGED ACTS OF INFRINGEMENT?

|  |  |
|---|---|
| Plaintiff Answers: | Yes. |
| Defendant Answers: | No. |
| Court Should Answer: | No. |

III.   DOES PLAINTIFF ALLEGE FACTS SUFFICIENT TO SHOW THAT DEFENDANT COMMITTED A VOLITIONAL ACT OF COPYRIGHT INFRINGEMENT?

|  |  |
|---|---|
| Plaintiff Answers: | Yes. |
| Defendant Answers: | No. |
| Court Should Answer: | No. |

IV.    IS THERE A SIGNIFICANT RISK OF MISIDENTIFICATION BASED ON THE THIRTY PERCENT FALSE POSITVE RATE AS ADMITTED BY PLAINTIFF'S COUNSEL?

|  |  |
|---|---|
| Plaintiff Answers: | No. |
| Defendant Answers: | Yes. |
| Court Should Answer: | Yes. |

V.     ARE PLAINTIFF'S ALLEGATIONS SUPORTABLE UNDER RULE 11?

|  |  |
|---|---|
| Plaintiff Answers: | Yes. |
| Defendant Answers: | No. |
| Court Should Answer: | No. |

## STATEMENT OF CONTROLLING AUTHORITY

In accordance with L.R. 7.1(c)(2), Defendants state that the following are the most controlling and/or most appropriate authorities relevant to deciding the issues raised in its motion are contained in the following provisions of Fed. R. Civ. P. 12(b)(6). Also see Bell Atl. Corp., v. Twombly, 550 U.S. 544, 555 (2007); Ashcroft v. Iqbal, 556 U.S. 662, (2009); SBO Pictures, Inc. v. Does 1-3036, 2011 WL 6002620, at *3 (N.D. Cal. 2011); Third Degree Films v. Doe, 2011 U.S. Dist. LEXIS 128030, (N.D. Cal. 2011); Pacific Century Intern. Ltd., v. Does 1-101, 2011 2011 U.S. Dist. LEXIS 124518 (N.D. Cal. 2011); Digital Sin, Inc. v. Does 1-5698, 2011 WL 5362068 (N.D. Cal. Nov. 4, 2011) In re: Ingenuity 13 LLC, No. 2:11-mc- 0084-JAM-DAD (E.D. Cal. 2012); In re Ingenuity 13 LLC, 2012 U.S. Dist. LEXIS 38647 (E.D. Cal. Mar. 20, 2012) Hard Drive Productions, Inc. v. Does 1-130, 2011 WL 553960 (N.D. Cal. 2011): VPR Internationale v. Does 1-1017, 2011 U.S. Dist. LEXIS 64656 (C.D. Ill. Apr. 29, 2011)

I.      INTRODUCTION

Plaintiff's Complaint alleges that Plaintiff's materials (i.e. pornographic video films) [1] were "made available" for distribution through a series of BitTorrent transactions conducted using a computer accessing the internet and identified through an Internet Protocol ("IP") address assigned to the Defendant's internet account. The entirety of these claims hinge upon Plaintiff's purely speculative conclusion that "The ISP to which the Defendant subscribes _**can**_ correlate the Defendant's IP address to Defendant's true identity." (Complaint ¶10)[emphasis added]. Elsewhere in the complaint, Plaintiff alleges that it Computer Investigators identified Defendant's IP address as being associated with a  swarm that was distributing Plaintiff's copyrighted works. (Complaint ¶37)[emphasis added]. This conclusion is prefaced exclusively on a boilerplate declaration executed by the employee of "a company organized and existing under the laws of Germany." (Complaint, Exhibit C at ¶4) (hereinafter "the Feiser Declaration".) The Feiser Declaration, however, provides no information or details whatsoever as to how Plaintiff concluded that Defendant as opposed to other individuals having access to his IP address committed any volitional act of copyright infringement as required to sustain a claim of direct copyright infringement. Accordingly, the allegations in Plaintiff's complaint are based on the assumption that Defendant is the _**actual**_ person who utilized the internet account for the aforementioned acts.

Neither the Feiser Declaration nor Plaintiff's Complaint provide any allegation that Defendant himself violated any of Plaintiff's rights apart from this conclusory statement and should be dismissed. See, e.g., <u>Cory</u> v. <u>Allstate Ins.,</u> 583 F.3d 1240, 1244 (10th Cir.

---

[1] Plaintiff alleges that fifteen of its registered works (i.e. Carlie Beautiful Blowjob, Carlie Bit Toy Orgasm. Carlie Leila Strawberries and Wine, Daddy's Office, Just the Two of Us, Kat Translucence, Katka Cum Like Crazy, Katka Sweet Surprise, Kristen Girl Next Door, Leila Sex on the Beach, Megan Morning Bath, Mina's Fantasy, The Girl in My Shower, Tiffany Teenagers In Love, Tori The Endless Orgasm) were "available" for digital download and/or reproduction using a torrent software program known as Siterip. (Plaintiff's Complaint ¶ 2)

2009)("[C]onclusory allegations without supporting factual averments are insufficient to state a claim on which relief can be based.")).

Perhaps more troubling is the fact that Defendant has provided Plaintiff with a sworn affidavit attesting to the fact that although he maintained an wireless internet system at his home that was accessible by other family members and/or their friends. (Exhibit 1; Affidavit of Jeffrey Roy, ¶ 4) In addition, Mr. Roy attested that he had never utilized the referenced file exchange program nor did he knowingly allow anyone else to use the program. (Exhibit 1; ¶ 4) Finally, Mr. Roy offered to allow Defendants to have unfettered access to his computer in order to verify the veracity of the statements set forth in his affidavit and confirm Mr. Roy's non-involvment in the aforementioned acts of infringement.[2] In response, Plaintiff's maintain that they have no interest in allowing Mr. Roy (and the thousands of other internet account holders) to prove their lack of involvement and continue to insist that  the only way for him to having to pay to defend himself from their claims is to submit their settlement demands – regardless of whether he was involved in the aforementioned acts of infringement.

Plaintiff has already been directly warned by one Court that similar litigation behavior was inappropriate, abusive and unfair. In re BitTorrent Adult Film Copyright Infringement Cases, 2012 U.S. Dist. LEXIS 61447 at *19 (E.D.N.Y. 2012) (noting that "plaintiffs have employed abusive litigations tactics to extract settlements from John Doe defendants"). Indeed, the Court went so far as to describe Plaintiff's justifications for such tactics as "rambling" and "farcical." Id. at n 7. More on point, the Court identified the exact scenario with which the Defendant is

---

[2]Defendant recognizes that the subject matter of his motion is based solely on the allegations contained in the pleadings, however, the purpose of attaching the sworn affidavit of Mr. Roy is to highlight the fact that Plaintiff (who has filed thousands of similar cases across the country) is not interested in ascertaining the truth of the matters asserted but is more interested in using the threat of continued litigation as a mechanism to force litigants into paying them thousands of dollars to settle the claims – regardless of the truth or falsity of the allegations contained therein. Accordingly, Defendant believes that these actions demonstrate Plaintiff's knowledge and awareness that it is pursuing claims against innocent individuals who were merely internet subscribers.

presented with, namely offering access to their networks and computers coupled with affidavit evidence of innocence and the preservation of evidence. *c.f.* Id. at 28. ("In this case, Mr. Roy offered the Plaintiff a sworn explanation of his non-involvment that is consistent with Plaintiff's own admissions that at least thirty-percent of the IP identifications have resulted in false identifications of potential infringers. (Exhibit 1)

## II.    STANDARD OF REVIEW

To survive a motion to dismiss for failure to state a claim, a complaint must satisfy the pleading requirements set forth in Federal Rule of Civil Procedure 8(a)(2). While Rule 8's pleading standard "does not require 'detailed factual allegations,' . . . it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)(citing Bell Atl. Corp., v. Twombly, 550 U.S. 544, 555 (2007)). Consequently, to survive a motion for dismissal, a "complaint's allegations must plausibly suggest that the plaintiff has a right to relief [and raise] the possibility above a 'speculative level'." Effkay Enters. v. J.H. Cleaners, Inc., 2008 U.S. Dist. LEXIS 46127 at *4-5 (D. Colo. June 5, 2008)(citing Twombly, 127 U.S. at 1964-65)). The court is to "assume the factual allegations are true and ask whether it is plausible that the plaintiff is entitled to relief." Gallagher v. Shelton, 587 F.3d 1063, 1068 (10th Cir. 2009), however the "tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements do not suffice." Iqbal, 556 U.S. at 647. "Nor does a complaint suffice if it tenders 'naked assertions' devoid of 'further factual enhancement.'" Khalik v. United Air Lines, 2010 U.S. Dist. LEXIS 129598 at *4 (D. Colo. Dec. 7, 2010)(quoting Twombly, 550 U.S. at 557)). This "plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted

unlawfully." <u>Patterson</u> v. <u>Dex Media, Inc.</u>, 2012 U.S. Dist. LEXIS 124067 at *4-5 (D. Colo. Aug. 31, 2012)(citing <u>Twombly</u>, 550 U.S. at 556))

III.     LAW AND ARGUMENT

Dismissal of this action is warranted as Plaintiff has failed to plead any factual content allowing "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." <u>Iqbal</u>, 556 U.S. at 678 (citing <u>Twombly</u>, 550 U.S. at 556)). In order to set forth a prima facie claim of direct copyright infringement Plaintiff must show ownership of a valid copyright and actual violation by the defendant of one or more exclusive rights set forth in 17 U.S.C. § 106. *See* <u>Feist Pubs., Inc.</u>, v. <u>Rural Tel. Serv. Co., Inc.</u>, 499 U.S. 340, 361 (1991). Pursuant to Fed. R. Civ. P. 8(a)(2), Plaintiff must plead facts sufficient to allow the Court to draw the inference that the defendant is liable for the alleged misconduct; in this case direct copyright infringement. However, Plaintiff's Complaint consists of a series of conclusory statements arranged to support the already speculative conclusion that "The ISP to which the Defendant subscribes ***can*** correlate the Defendant's IP address to Defendant's true identity." (Complaint ¶10)

      A.     PLAINTIFF HAS NOT PLED SUFFICIENT FACTS TO ALLOW THE COURT TO DRAW THE REASONABLE INFERENCE THAT DEFENDANT'S OWNERSHIP OF AN INTERNET ACCOUNT LINKS HIM TO THE ALLEGED ACTS OF COPYRIGHT INFRINGEMENT

In the prior John Doe action, Plaintiff represented to this court that leave to conduct early discovery was necessary as the issuance of third-party subpoenas to Defendant's Internet Service Provider ("ISP") was necessary to identify the actual infringer who they intended to name and serve. (*Plaintiff's Memorandum of Law In Support of Motion for Expedited Discovery, p. 3*) Plaintiff's prior motion explicitly stated that that the identification of the internet account holder would yield information as to the identity of the actual infringer. However, Plaintiff's assertion

4

(i.e. that the accountholder is the actual infringer) is merely a guess. In fact, in its complaint, Plaintiff has alleged that its computer investigators have only been able to state that "Defendant's IP Address" (as opposed to Defendant himself) participated in the "swarm that was allegedly distributing Plaintiff's works. *(Plaintiff's Complaint ¶ 37)* The allegations in the complaint recognize that other individuals having access to Defendant's computer may have been responsible for the alleged acts of infringement. Accordingly, the allegations that Defendant (as opposed to someone else having access to his internet address) is liable for infringement based on his participation in the swarm exchange is merely a guess.

As a factual matter, any customer of an ISP -- such as the moving Defendant – who connects their computer to the internet via the ISP is assigned an Internet Protocol (IP) address. In addition to the customer's IP address, the ISP's network is also assigned its own IP address. *See genera*lly LVRC Holdings v. Brekka, 581 F.3rd 1127, 1130 (9th Cir. 2009). An "IP address is a series of numbers associated with a server or website, and it is used to route traffic to the proper destination on the Internet." Kirch v. Embarq Mgmt. Co., 2011 U.S. Dist. LEXIS 92701 *10 (D. Kan. Aug. 19, 2011). More specifically, an IP address identifies only the location at which one of any number of computer devices may be deployed, especially when used with a wireless router as in the instant action. As a result, one court noted that, "[b]ecause it is common today for people to use routers to share one internet connection between multiple computers, the subscriber associated with the IP address may not necessarily be the alleged infringer" [Emphasis Added] Bubble Gum Productions, LLC v. Does 1-80, 2012 WL 2953309 at *4 (S.D.Fla. Jul. 19, 2012).

More on point, the United States District Court for the Eastern District of New York has already addressed an identical case involving the current Plaintiff, Malibu Media, LLC, the

erroneous assumption that an internet subscriber identified only by an IP address assigned to their account is an infringer holding that:

> [T]he assumption that the person who pays for Internet access at a given location is the same individual who allegedly downloaded a single sexually explicit film is tenuous, and one that has grown more so over time. An IP address provides only the location at which one of any number of computer devices may be deployed, much like a telephone number can be used for any number of telephones . . . Thus, it is no more likely that the subscriber to an IP address carried out a particular computer function — here the purported illegal downloading of a single pornographic film — than to say an individual who pays the telephone bill made a specific telephone call.

In re BitTorrent Adult Film Copyright Infringement Cases, 2012 U.S. Dist. LEXIS 61447, at *9 (E.D.N.Y. 2012); see also Next Phase Distrib., Inc. v. Does 1-27, 2012 U.S. Dist. LEXIS 107648, at *14-15 (S.D.N.Y. July 31, 2012)(same). The In re BitTorrent court further advised Plaintiff, Malibu Media, LLC, and its counsel in unambiguous terms that:

> [It was] concerned about the possibility that many of the names and addresses produced in response to Plaintiff's discovery request will not, in fact, be those of the individuals who downloaded "My Little Panties # 2." The risk is not purely speculative; Plaintiff's counsel estimated that 30% of the names turned over by ISPs are not those of individuals who actually downloaded or shared copyrighted material. Counsel stated that the true offender is often the "teenaged son ... or the boyfriend if it's a lady." Alternatively, the perpetrator might turn out to be a neighbor in an apartment building that uses shared IP addresses or a dormitory that uses shared wireless networks. This risk of false positives gives rise to the potential for coercing unjust settlements from innocent defendants such as individuals who want to avoid the embarrassment of having their names publicly associated with allegations of illegally downloading "My Little Panties # 2."

Id. (citing Digital Sin, Inc. v. Does 1-176, 2012 U.S. Dist. LEXIS 10803, at *3 (S.D.N.Y. 2012)) (citations omitted).

The In Re Bittorrent court specifically noted that Plaintiff's original complaint admitted that "IP addresses are assigned to devices" and that, as Plaintiff argued then, that by allowing Plaintiff to discover the individuals associated with those IP addresses, it would "reveal defendants' true identity." Id. at *13. The court flatly rejected this flawed reasoning and correctly

determine that identification of the actual infringer would be "unlikely" noting that "most, if not all, of the IP addresses will actually reflect a wireless router or other networking device, meaning that while the ISPs will provide the name of its subscriber, the alleged infringer could be the subscriber, a member of his or her family, an employee, invitee, neighbor or interloper." Id.

Contrary to Plaintiff's admittedly self-serving "guess," in identical Bittorrent cases across similar plaintiffs have even admitted the fact that an IP address does not, and cannot identify an infringer. See SBO Pictures, Inc. v. Does 1-3036, 2011 WL 6002620, at *3 (N.D. Cal. 2011)("the ISP subscribers to whom a certain IP address was assigned may not be the same person who used the Internet connection for illicit purposes."); Third Degree Films v. Doe, 2011 U.S. Dist. LEXIS 128030, *9 (N.D. Cal. 2011)(ISP subscriber information "does not tell Plaintiff who illegally downloaded Plaintiff's works."); Pacific Century Intern. Ltd., v. Does 1-101, 2011 2011 U.S. Dist. LEXIS 124518, at *2 (N.D. Cal. 2011)(noting that Plaintiff disavowed previous representations to the court that the requested discovery of subscriber's information based on an IP address would allow it to identify Defendants); Digital Sin, Inc. v. Does 1-5698, 2011 WL 5362068, at *4 (N.D. Cal. Nov. 4, 2011)(ISP subscribers may not be the individuals who infringed upon Digital Sin''s copyright); see also e.g. In re: Ingenuity 13 LLC, No. 2:11-mc-0084-JAM-DAD, Order [Doc. No. 24], at *10 (E.D. Cal. 2012) ("the identities of the subscribers associated with the identified IP addresses … would not reveal who actually downloaded petitioner's work, since the subscriber's internet connection could have been used by another person at the subscriber's location, or by an unknown party who obtained access to the subscriber's internet connection without authorization"); In re Ingenuity 13 LLC, 2012 U.S. Dist. LEXIS 38647, *18 (E.D. Cal. Mar. 20, 2012)( (ISP subscriber "information alone would not reveal who actually downloaded petitioner's work, since the subscriber's internet connection

could have been used by another person at the subscriber's location, or by an unknown party who obtained access to the subscriber's internet connection without authorization" and that petitioner "would be required to engage in further pre-filing discovery to determine if a viable cause of action existed against any of the identified subscribers."); Hard Drive Productions, Inc. v. Does 1-130, 2011 WL 553960, at *2 (N.D. Cal. 2011)("Plaintiff concedes, in some cases the Subscriber and the Doe Defendant will not be the same individual"); VPR Internationale v. Does 1-1017, 2011 U.S. Dist. LEXIS 64656 at *4 (C.D. Ill. Apr. 29, 2011) (noting that "[t]he infringer might be the subscriber, someone in the subscriber's household, a visitor with her laptop, a neighbor, or someone parked on the street at any given moment."). As Judge Martinez noted in Malibu Media, LLC v. Felitti:

> [S]ubscriber John Doe 1 could be an innocent parent whose internet access was abused by her minor child, while John Doe 2 might share a computer with a roommate who infringed Plaintiffs' works. John Does 3 through 203 could be thieves, just as Plaintiffs believe."

2012 U.S. Dist. LEXIS 103393, at *9-10 (D. Colo. July 25, 2012)(quoting Third Degree Films v. Does 1-3577, 2011 U.S. Dist. LEXIS 128030, at *4 (N.D. Cal. Nov. 4, 2011)). Judge Martinez even went so far as to note the effects of this disconnect between internet subscriber and actual infringer disclosing that:

> The Magistrate Judge assigned to all BitTorrent cases has noted that defendants are coming forward with a multitude of different defenses. Some are businesses alleging that a patron was the unlawful downloader. Others are elderly grandparents that do not even know what BitTorrent is or how to download a file from the internet; they may have owned the computer associated with the unique IP address, but have no knowledge of whether someone in their household may have used the BitTorrent protocol for the purposes alleged in the complaint."

Despite the overwhelming and specific findings and admissions to the contrary, Plaintiff admittedly named the Defendant as the alleged infringer simply because his name is on the internet bill. (Complaint ¶ 37). Thus, the  central allegation of Plaintiff's case is merely a guess.

8

Accordingly, Plaintiff has failed to carry this burden and its Complaint should be dismissed.

      B.     PLAINTIFF FAILS TO ALLEGE FACTS THAT DEFENDANT COMMITTED A VOLITIONAL ACT OF COPYRGHT INFRINGEMENT

Consistent with its burden under Fed. R. Civ. P. 8(a)(2), Plaintiff must plead facts sufficient to allow the Court to draw the inference that the Defendant violated one or more exclusive rights set forth in 17 U.S.C. §106. See, Feist, supra. 499 U.S. at 361. While copyright is a strict liability statute, many courts have correctly recognized that inherent in any such violation of a §106 right, some element of volition or causation must exist. See Religious Tech. Ctr v. Netcom On-Line Commc'n Servs., Inc., 907 F. Supp. 1361, 1369-70 (N.D. Cal. 1995) (granting motion to dismiss where Plaintiff failed to plead any plausible facts that Defendant committed a volitional act of copyright infringement.); see also Field v. Google, Inc., 412 F. Supp. 2d 1106 (D. Nev. 2006) (holding that a plaintiff must show volitional conduct on defendant's part to support finding of direct copyright infringement); (Cartoon Network LP v. CSC Holdings, Inc., 536 F.3d 121 (2d Cir. 2008)( holding that under section §106 of the Copyright Act a person must "engage in volitional conduct - specifically, the act constituting infringement - to become a direct infringer"). This is especially instructive as no automated or electronic process is alleged to have executed the infringing activity. Nor does Plaintiff allege any claims for secondary liability. For Defendant to have infringed Plaintiff's work in the manner alleged, he would have had to consciously and physically execute numerous physical steps to accomplish such an action. (i.e. installation of torrent program on his computer, accessing the identified internet siterip location, participation in file "swarm," etc.)

Since Plaintiff's allegations of direct infringement are based on Defendant's ownership of an internet account, it stands to reason that Plaintiff's complaint fails to make the casual connection that Defendant actually committed the infringement as opposed to someone else

utilizing his internet account.  Plaintiff's conclusory allegation that the identity of Defendant's IP address is tantamount to Defendant himself is legally insufficient.

      C.      PLAINTIFF'S     SUPPORTING    DECLARATION    IS    INACCURATE MISLIEADING AND FAILS TO LINK DEFENDANT TO THE ALLEGED ACTS OF INFRINGEMENT

Plaintiff's Complaint consists of a series of conclusory statements arranged to support the already speculative conclusion Defendant is the person who engaged in the infringing activity because the activities that occurred on his  IP are directly attributable to him. (Complaint ¶ 37) As noted above, the declaration of Tobias Fieser that was attached in support of Plaintiff's Motion for Leave to Conduct Discovery and referenced in ¶ 37 of Plaintiff's Complaint fails support these conclusion. Rather, the statements contained in Plaintiff's complaint (and in Mr. Feiser's declaration) merely state that  Defendant's IP address was utilized in the participant "swarm" used to distribute its copyrighted works. Admittedly, Defendant's IP address does not specifically link the activities that occurred on his account with the actual actions of Defendant himself.[3] While Mr. Feiser's declaration (and allegations in Plaintiff's complaint)  generally describes the procedure for collecting IP addresses, they include no such statement capable of showing that the activity occurring on one's internet account must therefore be the result of Defendant's own volitional acts. linking activity. For example, the Feiser Declaration provides no basis whatsoever to support the Plaintiff's conclusion that Defendant as the "subscriber of the IP address" was the actual individual who participated "swarm" used to distribute its copyrighted works

---

[3] It is also commonly know that firms such as IPP, Ltd., have a direct financial interest in the outcome of case where they provide evidence undermining the credibility of Mr. Feiser's entire declaration. See e.g. Metso Minerals, Inc. v. Powerscreen Int'l Distrib. Ltd., 833 F. Supp. 2d 282, 316 (E.D.N.Y. 2011) (Court determined declarant lacked credibility due to direct financial interest in the action).

Perhaps even more fatal to Plaintiff's allegations, the Feiser Declaration and allegation in Plaintiff's complaint have been utilized to mislead the court into believing that the identification of an IP address will yield information as to the identity of the actual infringer.

First, the Feiser Declaration states that an "IP address is a unique numerical identifier that is automatically assigned to an internet user by the user's Internet Service Provider ("ISP"). (Feiser Decl. ¶7). However, this is incorrect and misleading. As previously described, any subscriber of an ISP, such as Defendant, who connects their computer to the Internet via the ISP, for example through a wireless router, is assigned an Internet Protocol (IP) address. Kirch, 2011 U.S. Dist. LEXIS at *10. As noted above, the purpose of an IP address is to route traffic efficiently through the network. IP addresses only specify the locations of the source and destination nodes in the topology of the routing system. As such, as an IP address, as described above, is not assigned to an "internet user" but merely an internet access point such as a wireless router. In Re: BitTorrent, 2012 U.S. Dist. LEXIS 61447 at *13. ("[m]ost, if not all, of the IP addresses will actually reflect a wireless router or other networking device). Furthermore, as detailed above, an IP address simply cannot identify a computer being used nor the actual user. Id. at *9. The Feiser Declaration contradicts itself later conceding that that the ISP can only correlate an IP address to "the subscriber of the internet service." (Feiser Declaration ¶9). Plaintiffs unsupported and misleading conflation between Defendant/subscriber with an actual infringer/user -- if such a person even exists -- cannot rise above merely a speculative claim for relief against Defendant and Plaintiff's claims should be dismissed.

Second, no good faith basis exists for the Feiser Declaration's statement that the information listed in Exhibits A and B of the Complaint identified the "infringement committed

by the Defendant in this case." (Feiser Decl. ¶18) The Feiser Declaration goes onto to make the unsupported statement that a "computer using the IP address assigned to Defendant" participated in the alleged infringing activity, (Id. at ¶19), and that the ISP can "identity the name…of the Defendant." (Id. at ¶22). Again, these statements are incorrect and misleading and not offered in good faith. An IP address can neither identify an individual nor a specific computer, let alone Defendant's computer, or any specific computer accessing the internet. See, In Re: BitTorrent, 2012 U.S. Dist. LEXIS 61447 at *13. ("Most, if not all, of the IP addresses will actually reflect a wireless router or other networking device, meaning that while the ISPs (sic) will provide the name of its subscriber, the alleged infringer could be the subscriber, a member of his or her family, an employee, invitee, neighbor or interloper.").

There exists no reasonable good faith basis upon which Mr. Feiser or Plaintiff could state that the Defendant, based on an IP address alone infringed on anyone's work(s). In an identical Bittorrent case, two separate declarations -- herein referred to as Exhibit 2 and incorporated in their entirety by reference -- provided by experienced and qualified computer science professionals confirm that there is no way that a person in Mr. Feiser's position or Plaintiff's position could have made the aforementioned claims in good faith. (Decl. Stephen Hendricks ¶10). Indeed, both declarations confirm that it would be impossible to make any such determination. (Exhibit 2; Decl. Stephen Hendricks ¶10; Decl. John Simek ¶6).[4] Such inaccurate and misleading evidence offered in bad faith cannot support Plaintiff's claims and its Complaint should be dismissed.

Third, the Feiser Declaration's conclusory and unsupported statements that the Defendant: 1) committed an act of infringement, 2) using his computer; and that he 3) can be identified fails

---

[4]Similar to the Defendant referenced in both the Hendricks and Simek declarations, Defendant's ISP is Comcast.

as a matter of fact. For example, a subscriber can be misidentified in multiple ways as an infringer without participating in any infringing behavior, including at least:

1.  Some members of a swarm simply and automatically pass on routing information to other clients, and never possess even a bit of the movie file;[5]

2.  A client requesting a download can substitute another IP address for its own to a Bittorrent tracker;[6]

3.  A user can misreport its IP address when uploading a torrent file. A user in the network path between the user monitoring IP address traffic and the Bittorrent tracker can implicate another IP address;[7]

4.  Malware on a computer can host and distribute copyrighted content without knowledge or consent;[8]

5.  There are reliability issues with using IP addresses and timestamps to identify the correct party;[9]

6.  If a subscriber has dynamic IP addressing through its website host, it is sharing an IP address with several other subscribers;[10]

7.  Anyone with wireless capability can use a subscriber's "wi-fi" network to access the Internet, giving the impression that it is the subscriber who is infringing;[11] or

---

[5]Sengupta, S. et al., Peer-to-Peer Streaming Capacity, IEEE Transactions on Information Theory, Vol. 57, Issue 8, pp. 5072-5087, at 5073 (Prof. Helmut Bolcski, ed., 2011) ("A [BitTorrent] user may be the source, or a receiver, or a helper that serves only as a relay.").

[6]Michael Piatek et al., Challenges and Directions for Monitoring P2P File Sharing Networks—or—Why My Printer Received a DMCA Takedown Notice, 3 (2008), http://dmca.cs.washington.edu/uwcse_dmca_tr.pdf See also, "IP address spoofing" http://en.wikipedia.org/wiki/IP_address_spoofing (Last visited August 2, 2012) (the term IP address "spoofing" refers to the creation of a forged IP address with the purpose of concealing the user's identity or impersonating another computing system.). Specifically, the article concludes: "[W]e find that it is possible for a malicious user (or buggy software) to implicate (frame) seemingly any network endpoint in the sharing of copyrighted materials. We have applied these techniques to frame networked printers, a wireless (non-NAT) access point, and an innocent desktop computer, all of which have since received DMCA takedown notices but none of which actually participated in any P2P networks.

[7]Ibid.

[8]Ibid.

[9]Ibid. ("When IP addresses are assigned dynamically, reassignment of an IP address from an infringing user to an innocent user can cause the behavior of the infringing user to be attributed to the innocent user. Because the monitoring client (copyright holder) records information from the tracker of the Bittorrent client, the information can quickly become inaccurate and will not implicate the correct user.")

[10]"Web hosting service" http://en.wikipedia.org/wiki/Web_hosting_service (Last visited August 2, 2012).

[11]Carolyn Thompson writes in an MSNBC article of a raid by federal agents on a home that was linked to downloaded child pornography. The identity and location of the subscriber were provided by the ISP. The desktop computer, iPhones, and iPads of the homeowner and his wife were seized in the raid. Federal agents returned the equipment after determining that no one at the home had downloaded the illegal material. Agents eventually traced the downloads to a neighbor who had used multiple IP subscribers' Wi-Fi connections (including a secure connection from the State University of New York). See Carolyn Thompson, Bizarre Pornography Raid

13

8.     Human error by IPP, Ltd, Plaintiff and/or the ISP among others.

All of the above footnoted information is publically available and may be considered by this Court. See Grynberg v. Koch Gateway Pipeline Co., 390 F.3d 1276, 1279 n.1 (10th Cir. 2004)(in ruling on a Rule 12(b)(6) motion to dismiss, a court may properly consider facts subject to judicial notice such as court files and matters of public record)(citations omitted).

Such facts do not exist in a vacuum. By defining Doe Defendants as ISP subscribers who were assigned certain IP addresses, instead of the actual Internet users who allegedly engaged in infringing activity, "Plaintiff's sought-after discovery has the potential to draw numerous innocent internet users into the litigation." Hard Drive Prods., Inc. v. Does 1-130, No. C-11-3826 DMR, 2011 U.S. Dist. LEXIS 132449, at *6 (N.D. Cal. Nov. 16, 2011)).

Recent court decisions have expressed strong concerns along these lines about the coercive nature of copyright claims based on Bittorrent identification and especially involving pornographic material. In re Bittorrent, supra, 2012 WL 1570765 at *10 ("This concern, and its potential impact on social and economic relationships, could compel a defendant entirely innocent of the alleged conduct to enter an extortionate settlement"); SBO Pictures, Inc. v. Does 1-3036, 2011 U.S. Dist. LEXIS 137361, at *11 (N.D. Cal. Nov. 30, 2011) (a defendant – "whether guilty of copyright infringement or not -- would then have to decide whether to pay money to retain legal assistance to fight the claim that he or she illegally downloaded sexually explicit materials, or pay the money demanded. This creates great potential for a coercive and unjust 'settlement'"); See also Zero Tolerance Entertainment, Inc. v. Does 1-45, 2012 WL 2044593 at *1 (S.D.N.Y. Jun. 6, 2012) (discovery of ISP subscriber information "has been used repeatedly in cases such as this one to harass and demand of defendants quick settlement

---

Underscores Wi-Fi Privacy Risks www.msnbc.msn.com/id/42740201/ns/technology_and_sciencewireless/ (April 15, 2011)

payments, regardless of their liability"). Defendant does not argue that Plaintiff has no right to enforce its valid copyrights in accordance with the laws and procedures of this Court, however, such claims must comport with the pleading and evidentiary standards of those same laws. It has not, and its Complaint should be dismissed.

>D.  COUNSEL IN IDENTICAL CASES HAVE ADMITTED THAT THERE EXISTS A SIGNIFICANT RISK OF MISIDENTIFICATION

The increasing popularity of wireless routers through which unknown interlopers can access subscribers' internet accounts, In re Bittorrent, supra, 2012 WL 1570765 at *3, makes the allegation that the subscribers committed the infringement in this case all the more speculative. The Court should not close its eyes to the significant risk that people innocent of any copyright infringement are being falsely identified as "Defendants" and swept up in such BitTorrent lawsuits. Specifically, in an age when most homes have routers and wireless networks and multiple computers share a single IP address "there is a reasonable likelihood that the [defendants] may have had no involvement in the alleged illegal downloading that has been linked to his or her IP address." Malibu Media, LLC v. John Does 1-11, 2012 U.S. Dist. LEXIS 94648 (D.D.C. July 10, 2012).

Various plaintiffs in identical Bittorrent cases have even admitted on the record that ISP subscriber information is insufficient to identify and name an alleged infringer. Indeed, as one judge observed in another of identical Bittorrent case, plaintiff's counsel admitted in open court that:

> 30% of the names turned over by the ISP's are not those of the individuals who actually downloaded or shared copyrighted material.

Digital Sin, Inc. v. Does 1-176, 279 F.R.D. 229, 242 (S.D.N.Y. 2012) citing (1/17/12 Tr. at 16) (emphasis added); see also Pacific Century Intern. Ltd., v. Does 1-101, 2011 U.S. Dist. LEXIS

124518, *2 (N.D. Cal. 2011)(noting that Plaintiff disavowed previous representations to the court that the requested discovery would allow it to "fully identify" Defendants and further admitting that the discovery often will not reveal Defendants' identities); <u>AF Holdings LLC</u> v.<u>Does 1-96</u>, 2011 U.S. Dist. LEXIS 134655, at *11-12 (N.D. Cal. Nov. 22, 2011)(plaintiff conceded on the record that "the [ISP subscriber] information subpoenaed will merely reveal the name and contact information of the subscriber to the Internet connection that was used to download the copyrighted work, but it will not reveal who actually downloaded the work and therefore who can be named as a defendant.")

Instructive also is <u>Boy Racer, Inc.</u> v. <u>Doe</u>, 2011 U.S. Dist. LEXIS 103550 (N.D. Cal. Sept. 13, 2011). Here the plaintiff in identical Bittorrent case admitted that its previous representation to the court that ISP subscriber information was not sufficient to "fully identify" a P2P network user suspected of violating the plaintiff's copyright was false and instead that still more discovery would be required to identify the actual infringer. Id. at *6-7. The Plaintiff in that case specifically stated on the record that:

> While Plaintiff has the identifying information of the subscriber, this does not tell Plaintiff who illegally downloaded Plaintiff's works, or, therefore, who Plaintiff will name as the Defendant in this case. It could be the Subscriber, or another member of his household, or any number of other individuals who had direct access to Subscribers network.

<u>Id</u>. Needless to say the <u>Boy Racer</u> court found this "turn of events troubling, to say the least." <u>Id</u>. at *7-8.

Even more instructive for this Court, in another identical Bittorrent case, plaintiff's counsel, in seeking to address the Court's concern that it may be pursing and innocent internet subscribers admitted in court documents that it would require additional discovery before it could determine if the subscriber was in fact one in the same stating that:

> Although a subscriber and doe defendant will often be one-and-the-same, it can be the case that they are different people. In cases, such as the present action, where the subscriber completely refuses any form of communication with Plaintiff's counsel, limited additional discovery is often needed to confirm that the subscriber may be named as a Doe Defendant.

Further stating that:

> "[a]fter making its determination [through additional deposition discovery] as to the correct Defendant, Plaintiff will effectuate service."

Hard Drive Prod's. v. Doe, N.D. Cal. Case No. 22-1566, Status report filed by Brett Gibbs: Dkt. No. 29, 11/11/11). *See* Section III(c), infra. Similar to the 30% error rate admitted in the Digital Sins court, here plaintiff's counsel, operating under nearly identical facts admits that in order to have a good faith basis to allege that an Internet subscriber is actually a Defendant; it needs to know more than that the person happens to pay the bill. Id.[12]

Such admissions provide further support that Plaintiff's unsupported "guess" that Defendant is the "most likely infringer" in this case is utterly speculative, and the complaint is thus subject to dismissal, as: 1) Plaintiff admittedly does not know who actually committed the alleged infringement (Complaint, ¶ 37); 2) the Complaint alleges no facts supporting an inference that the subscriber of the account, i.e., the Defendant who merely pays the bill for the account, is in fact the individual who actually uploaded or downloaded Plaintiff's movie; and 3) the Complaint alleges no basis for holding an account subscriber liable for the allegedly infringing conduct of unknown others, even if such person(s) even existed.

### E.     PLAINTIFF'S ALLEGATIONS ARE LIKELY UNSUPPORTABLE UNDER EVEN RULE 11

Plaintiff conclusory allegations that Defendant, as merely an internet subscriber is the

---

[12]These aforementioned admissions may be judicially noticed by this Court. *See* generally St. Louis Baptist Temple v. FDIC, 605 F. 2d 1169, 1171-1172 (10th Cir. 1979) ("federal courts, in appropriate circumstances, may take notice of proceedings in other courts, both within and without the federal judicial system, if those proceedings have a direct relation to matters at issue.").

"most likely infringer" is likely not even supportable under Fed. R. Civ. P. 11, let alone Fed. R. Civ. P. 12(b)(6). Specifically, naming an internet account subscribers as a Defendant – without any evidentiary basis for claiming that the subscribers actually committed the alleged infringement – likely violates Rule 11's requirement that "the factual contentions (i.e., that the defendant in this case was personally involved in uploading and downloading copyrighted material) have evidentiary support . . ." An attorney's signature on a motion or pleading means "that to the best of his or her knowledge, information, and belief there is good ground to support the contentions in the document, both in terms of what the law is or should be and in terms of the evidentiary support for the allegations, and that he or she is acting without an improper motivation." Charles Alan Wright & Arthur R. Miller, 5A *Fed. Prac. & Proc. Civ.* § 1335 (3d ed.).

Plaintiff, Malibu Media, LLC, has been specifically warned in an identical Bittorrent case of the potential for sanctions for incorrectly identifying and naming defendants. *See* <u>Malibu Media, LLC</u> v. <u>Doe</u>, 2012 U.S. Dist. LEXIS 110668, at *6-7 (M.D. Fla. Aug. 7, 2012) ("The plaintiff shall inform each John Doe defendant of the potential for sanctions under Rule 11, Fed. R. Civ. P., if the John Doe defendant is incorrectly identified"); *see also* e.g. <u>Hard Drive Productions</u> v. <u>Does 1-48</u>, No. 11-9062, 2012 U.S. Dist. LEXIS 82927, 2012 WL 2196038, *6 (N.D. Ill. June 14, 2012) (warning plaintiff to consider Rule 11 before naming defendant who disputed that he had illegally downloaded pornographic movie). As another court recognized earlier this month, subscribers to internet accounts may be made defendants in these kinds of cases only "on the basis of their allegedly infringing activity, not due to their status as subscribers of the IP address utilized." <u>Discount Video Center, Inc.</u> v. <u>Does 1-29</u>, 2012 U.S. Dist. LEXIS 112518, at *5 n. 7 (D. Mass. Aug. 10, 2012).

Indeed, public records indicate that Plaintiff, Malibu Media, LLC, has filed approximately 355 lawsuits since February of this year, implicating what is believed to be approximately 5000 individuals or businesses. Assuming the generous estimate of a 30% false positive rate, the potential exists for approximately ~1700 defendants to be wrongful caught up in such suits. Coupled with Plaintiff's consistent refusal to accept exculpatory evidence from Defendant -- and other similarly situated individuals as demonstrated in Exhibit A, supports a conclusion that Plaintiff's conclusory allegations lack evidentiary support and as such cannot rise above mere speculation warranting dismissal.

V.    CONCLUSION

Plaintiff's allegations against Defendant in this case are premised on the mere possibility that he might have been the infringing individual. Such conjecture, based solely on Defendants status as the internet accountholder, is exactly the kind of speculative pleading that is barred by Twombly, Iqbal, and their progeny. Plaintiff cannot just guess, as it does in its Complaint, that defendant "is the most likely infringer" because it doesn't have any factual basis to name anyone else. The Complaint must therefore be dismissed for failure to state a claim. Defendant further requests that the Court retain jurisdiction as to the issue of awarding attorney's fees and costs, including imposition of sanctions under Fed. R. Civ. P. 11, and other bases.

Dated: November 14,  2012                    s/ John T. Hermann
                                             JOHN T. HERMANN (P-52858)
                                             Counsel for Defendant
                                             2684 West Eleven Mile
                                             Berkley, MI 48072
                                             (248) 591-9291

## **CERTIFICATE OF ELECTRONIC SERVICE**

I hereby certify that I electronically filed the foregoing paper with the Clerk of the Court

with the ECF system, which will send notification of each filing to the following:

Paul J. Nicoletti, Esq.

Dated: November 14,  2012               s/ John T. Hermann
                                             JOHN T. HERMANN (P-52858)
                                             Counsel for Defendant
                                             2684 West Eleven Mile
                                             Berkley, MI 48072
                                             (248) 591-9291