**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF MICHIGAN**

MALIBU MEDIA, LLC,                          )     Case No. 1:12-cv-00617-RJJ
                                            )     Hon. Robert J. Jonker
         Plaintiff,                       )
    vs.                                     )
                                            )
JEFFREY ROY,                                )
                                            )
         Defendant.                       )
                                            )

---

PAUL J. NICOLLETTI  (P-44419)              JOHN T. HERMANN  (P-52858)
Attorney for Plaintiff                     Attorney for Defendant
36880 Woodward Ave, Suite 100              2684 West Eleven Mile Road
Bloomfield Hills, MI 48304                 Berkley, MI 48072
(248) 203-7801                             (248) 591-9291

---

**DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**
**PURSUANT TO FED. R. CIV. P. 56**

Defendant, JEFFREY ROY, moves this court pursuant to Fed. R. Civ. P. 56(a) for Summary Judgment based on the failure to present an issue of material fact with regard to Plaintiff's allegations of copyright infringement. In accordance with LR 7.1, counsel for Defendant asserts that he contacted Plaintiff's counsel regarding the issue raised in this motion, but did not obtain concurrence in the relief sought.

1.     October 19, 2012, Plaintiff filed suit against Mr. Roy claiming that he illegally downloaded and/or exchanged fifteen of their adult content videos using a BitTorrent file sharing program on or about May 22, 2012.

2.     Plaintiff alleges that its copyrighted materials (i.e. pornographic video films) were "made available" for distribution through a series of BitTorrent transactions conducted using a computer address assigned to Mr. Roy's internet account.

4.     Discovery is currently closed and Plaintiff has failed to produce any evidence to substantiate that Mr. Roy as opposed to someone else having access to his internet account was the perpetrator of the infringing activity.

5.     Similarly, Plaintiff has failed to produce any evidence to substantiate that Mr. Roy contributed to someone else's downloading and/or exchanging any of Plaintiff's copyrighted materials other than the fact that he maintained an internet connection with Charter Communications, Inc.

6.     The un-rebutted evidence demonstrates that Mr. Roy (1) did not utilize the BitTorrent program; (2) did not download or exchange any of Plaintiff's copyrighted materials; (3) was unaware of anyone else downloading and/or exchanging any of Plaintiff's copyrighted materials through his internet account. (Exhibit 1 & 2)

7.     Fed. R. Civ. Pro 56(a) specifies that the court shall grant summary judgment in favor of the moving party if the opposing party is unable to present evidence sufficient to create a genuine issue of material fact.

8.     Pursuant to L.R. 7.1(a), counsel for Defendant, asserts that he has sought concurrence in this Motion from Defendants, but was unable to obtain the requested relief.

WHEREFORE, Defendant JEFFREY ROY requests that the court grant his request for summary judgment and enter an order dismissing its complaint pursuant to Fed. R. Civ. P. 56.

Dated: September 30, 2013                    s/ John T. Hermann
                                            JOHN T. HERMANN (P52858)
                                            Attorney for Defendant
                                             2684 West Eleven Mile Road
                                            Berkley, MI 48042
                                            (248) 591-2300

## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF MICHIGAN

MALIBU MEDIA, LLC,                    )    Case No. 1:12-cv-00617-RJJ
                                      )    Hon. Robert J. Jonker
        Plaintiff,          )
    vs.                             )
                                      )
JEFFREY ROY,                          )
                                      )
        Defendant.          )
                                      )

---

PAUL J. NICOLLETTI  (P-44419)           JOHN T. HERMANN  (P-52858)
Attorney for Plaintiff                  Attorney for Defendant
36880 Woodward Ave, Suite 100           2684 West Eleven Mile Road
Bloomfield Hills, MI 48304              Berkley, MI 48072
(248) 203-7801                          (248) 591-9291

---

## BRIEF IN SUPPORT DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Dated:  September 1, 2013                s/ John T. Hermann
                                      JOHN T. HERMANN (P52858)
                                      Attorney for Defendant
                                      2684 West Eleven Mile Road
                                      Berkley, MI 48072
                                      (248) 591-9291

## <u>TABLE OF CONTENTS</u>

INDEX OF AUTHORITIES.....................................................................................iii-v

STATEMENT OF ISSUES PRESENTED...........................................................vi-vii

STATEMENT OF CONTROLLING AUTHORITY ................................................ viii

I.     INTRODUCTION ........................................................................................ 1

II.    FACTUAL BACKGROUND ........................................................................ 4

II.    STANDARD OF REVIEW ........................................................................... 6

III.   LAW AND ARGUMENT ............................................................................. 6

        A.    Plaintiff Has Failed To Produce Evidence Sufficient To Raise A Question Of Material Fact That the Defendant Engaged In Copyright Infringement ........................................................................ 7

        B.    Plaintiff Has Failed To Produce Evidence Sufficient To Raise A Question Of Material Fact That the Defendant Engaged In Contributory Infringement ..................................................................... 11

        C.    Plaintiff Has Failed To Produce Evidence Sufficient Evidence That Defendant Committed a Volitional Act of Copyright Infringement ....... 12

        D.    Plaintiff's Supporting Declaration Is Insuffcient To Link Defenant To The Alleged Acts of Infringement ....................................................... 13

        E.    Counsel In Identical Cases Have Admitted That There Exists A Significant Risk Of Misidentification....................................................... 17

        F.    Plaintiff's Allegations Are Likely Unsupportable Under Rule 11 ........... 20

V.    CONCLUSION ........................................................................................... 22

## INDEX OF AUTHORITIES

### CASES

AF Holdings LLC v.Does 1-96,
2011 U.S. Dist. LEXIS 134655, (N.D. Cal. Nov. 22, 2011) ........................................ 18

A&M Records, Inc. v. Napster, Inc., 239 F. 3d 1004, 1019 (9th Cir. 2001) .................................... 12

Ashcroft v. Iqbal, 556 U.S. 662, (2009) ...................................................................... 12

Boy Racer, Inc. v. Doe, 2011 U.S. Dist. LEXIS 103550 (N.D. Cal. Sept. 13, 2011) ................. 19

Bubble Gum Productions, LLC v. Does 1-80, 2012 WL 2953309 (S.D.Fla. Jul. 19, 2012) ......... 8

Cartoon Network LP v. CSC Holdings, Inc, 536 F. 3d 121 (2nd Cir. 2008) ............................... 12

Celotex Corp. v. Catrett, 477 U.S. 317, 324, 106 S. Ct. 2548, 2553, 91 L. Ed. 2d 265 (1986)  ... 6

Chubby, Inc. v. Compuserve, Inc., 776 F. Supp. 135 (S.D.N.Y. 1991) ........................................... 12

Cory v. Allstate Ins., 583 F.3d 1240 (10th Cir. 2009) ................................................... 6

Digital Sin, Inc. v. Does 1-176, 2012 U.S. Dist. LEXIS 10803, (S.D.N.Y. 2012) ................. 9, 18

Discount Video Center v. Does 1-29,
2012 U.S. Dist. LEXIS 112518 (D. Mass, Aug. 10, 2012) ...................................... 21

Feist Pubs., Inc., v. Rural Tel. Serv. Co., Inc., 499 U.S. 340 (1991)...................................... 7, 12

Field v. Google, Inc., 412 F. Supp. 2d 1106 (D. Nev. 2006) ...................................... 12

Fonovisa, Inc. v. Cherry Auction, Inc., 76 F. 3d 259, 264 (9th Cir. 1996) ...................................... 12

Gershwin Publishing Corp. v. Columbia Artists Mgmt., Inc., 443 F.2d 1159 (2nd Cir. 1971) .......... 12

Grynberg v. Koch Gateway Pipeline Co., 390 F.3d 1276 (10th Cir. 2004) ............................... 18

Hard Drive Productions, Inc. v. Does 1-130, 2011 WL 553960, (N.D. Cal. 2011) .............. 10,17

Hard Drive Prod's. v. Doe, N.D. Cal. Case No. 22-1566 ........................................... 17

Hard Drive Productions v. Does 1-48,
2012 U.S. Dist. LEXIS 82927, (N.D. Ill. June 14, 2012) ......................................... 20

In re BitTorrent Adult Film Copyright Infringement Cases,
2012 U.S. Dist. LEXIS 61447 (E.D.N.Y. 2012) ........................................... 2, 3, 9, 14, 15, 17, 18

In re: Ingenuity 13 LLC, No. 2:11-mc- 0084-JAM-DAD (E.D. Cal. 2012) ............................... 10

In re Ingenuity 13 LLC, 2012 U.S. Dist. LEXIS 38647 (E.D. Cal. Mar. 20, 2012) ................... 10

Kirch v. Embarq Mgmt. Co., 2011 U.S. Dist. LEXIS 92701 *10 (D. Kan. Aug. 19, 2011) ........ 8

LVRC Holdings v. Brekka, 581 F.3rd 1127, 1130 (9th Cir. 2009) ................................................ 8

Malibu Media, LLC v. Felitti: 2012 U.S. Dist. LEXIS 103393, (D. Colo. July 25, 2012) ........ 11

Malibu Media, LLC v. John Does 1-11,
2012 U.S. Dist. LEXIS 94648 (D.D.C. July 10, 2012) ............................................. 18

Malibu Media, LLC v. Doe, 2012 U.S. Dist. LEXIS 110668, (M.D. Fla. Aug. 7, 2012) .......... 21

Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587, 106 S. Ct. 1348,
1356, 89 L. Ed. 2d 538 (1986) ........................................................................... 6

Metso Minerals, Inc. v. Powerscreen Int'l Distrib. Ltd.,
833 F. Supp. 2d 282 (E.D.N.Y. 2011) ........................................................... 13

Next Phase Distrib., Inc. v. Does 1-27,
2012 U.S. Dist. LEXIS 107648, (S.D.N.Y. July 31, 2012) ........................................ 9

Pacific Century Intern. Ltd., v. Does 1-101,
2011 U.S. Dist. LEXIS 124518, (N.D. Cal. 2011) ................................................ 10, 18

Polygram Int'l Publ'g, Inc. v. Nevada/TIG, Inc., 855 F. Supp. 1314 (D. Mass 1994) ..................... 12

Religious Tech. Ctr v. Netcom On-Line Commc'n Servs., Inc.,
907 F. Supp. 1361, (N.D. Cal. 1995) ........................................................ 12, 13

SBO Pictures, Inc. v. Does 1-3036, 2011 WL 6002620, (N.D. Cal. 2011) ........................... 10, 17

St. Louis Baptist Temple v. FDIC, 605 F. 2d 1169 (10th Cir. 1979) ............................... 20

Third Degree Films v. Doe, 2011 U.S. Dist. LEXIS 128030, (N.D. Cal. 2011) ................... 11, 12

United States v. Diebold, Inc., 369 U.S. 654, 655, 82 S. Ct. 993, 994, 8 L. Ed. 2d 176 (1962) ... 6

VPR Internationale v. Does 1-1017, 2011 U.S. Dist. LEXIS 64656 (C.D. Ill. Apr. 29, 2011) 6, 10

Zero Tolerance Entertainment, Inc. v. Does 1-45, 2012 WL 2044593 (S.D.N.Y. Jun. 6, 2012) 17

**STATUTES**

17 U.S.C. § 106 ........................................................................... 12, 13

**COURT RULES**

Fed. R. Civ. P. 12(b)(6) ...................................................................... 16

Fed. R. Civ. P. 11 ......................................................................... 20, 22

Fed. R. Civ. P. 56 ......................................................................... 20, 22

Fed. R. Civ. P. 56(c) ......................................................................... 6

Fed. R. Civ. P. 56(e) ......................................................................... 6

**MISCELLANEOUS**

Charles Alan Wright & Arthur R. Miller, 5A *Fed. Prac. & Proc. Civ.* § 1335 (3d ed.) ............ 21

## STATEMENT OF ISSUES PRESENTED

I.    HAS PLAINTIFF PRODUCED EVIDENCE SUFFICIENT TO RAISE A QUESTION OF MATERIAL FACT LINKING DEFENDANT TO THE ALLEGED ACTS OF INFRINGEMENT?

| | |
|---|---|
| Plaintiff Answers: | Yes. |
| Defendant Answers: | No. |
| Court Should Answer: | No. |

II.    HAS PLAINTIFF PRODUCED EVIDENCE SUFFICIENT TO RAISE A QUESTION OF MATERIAL FACT DEMONSTRATING THAT DEFENDANT MATERIALLY CONTRIBUTED TO THE CONDUCT OF ANOTER INDIVIDUALS ACT OF INFRINGEMENT?

| | |
|---|---|
| Plaintiff Answers: | Yes. |
| Defendant Answers: | No. |
| Court Should Answer: | No. |

III.    HAS PLAINTIFF PRODUCED SUFFICEINT EVIDENCE TO SHOW THAT DEFENDANT COMMITTED A VOLITIONAL ACT OF COPYRIGHT INFRINGEMENT?

| | |
|---|---|
| Plaintiff Answers: | Yes. |
| Defendant Answers: | No. |
| Court Should Answer: | No. |

III.    IS PLAINTIFF'S SUPPORING DECLARATION SUFFICIENT TO LINK DEFENDANT TO THE ALLEGED ACTS OF INFRINGEMENT?

| | |
|---|---|
| Plaintiff Answers: | Yes. |
| Defendant Answers: | No. |
| Court Should Answer: | No. |

IV.    IS THERE A SIGNIFICANT RISK OF MISIDENTIFICATION BASED ON THE THIRTY PERCENT FALSE POSITVE RATE AS ADMITTED BY PLAINTIFF'S COUNSEL?

| | |
|---|---|
| Plaintiff Answers: | No. |
| Defendant Answers: | Yes. |
| Court Should Answer: | Yes. |

V.      ARE PLAINTIFF'S ALLEGATIONS SUPORTABLE UNDER RULE 11?

| | |
|---|---|
| Plaintiff Answers: | Yes. |
| Defendant Answers: | No. |
| Court Should Answer: | No. |

## STATEMENT OF CONTROLLING AUTHORITY

In accordance with L.R. 7.1(c)(2), Defendants state that the following are the most controlling and/or most appropriate authorities relevant to deciding the issues raised in its motion are contained in the following provisions of Fed. R. Civ. P. 56. Also see Ashcroft v. Iqbal, 556 U.S. 662, (2009); SBO Pictures, Inc. v. Does 1-3036, 2011 WL 6002620, at *3 (N.D. Cal. 2011); Third Degree Films v. Doe, 2011 U.S. Dist. LEXIS 128030,  (N.D. Cal. 2011); Pacific Century Intern. Ltd., v. Does 1-101, 2011 2011 U.S. Dist. LEXIS 124518 (N.D. Cal. 2011); Digital Sin, Inc. v. Does 1-5698, 2011 WL 5362068 (N.D. Cal. Nov. 4, 2011) In re: Ingenuity 13 LLC, No. 2:11-mc- 0084-JAM-DAD (E.D. Cal. 2012); In re Ingenuity 13 LLC, 2012 U.S. Dist. LEXIS 38647 (E.D. Cal. Mar. 20, 2012) Hard Drive Productions, Inc. v. Does 1-130, 2011 WL 553960 (N.D. Cal. 2011): VPR Internationale v. Does 1-1017, 2011 U.S. Dist. LEXIS 64656 (C.D. Ill. Apr. 29, 2011)

## I.     INTRODUCTION

Plaintiff alleges that its copyrighted materials (i.e. pornographic video films)[1] were "made available" for distribution through a series of BitTorrent transactions conducted using a computer address assigned to Defendant's internet account. In support of its claims, Plaintiff asserts that since the infringing activity occurred on Mr. Roy's internet account – he must therefore be the infringer. *(See Count I of Plaintiff's Complaint for Direct Infringement)* Alternatively, Plaintiff asserts that Mr. Roy is liable t for allowing others to utilize his internet connection to download and/or exchange their copyrighted materials. *(See Count I of Plaintiff's Complaint for Contributory Infringement)*

In May of 2012, Plaintiff computer technicians identified seven IP address participating in an internet "swarm" that was distributing Plaintiff's copyrighted works. Plaintiff relies on the declaration executed by Tobias Feiser (Docket Entry No. 4-2 ¶ 20) (hereinafter "the Feiser Declaration".) The Feiser Declaration, however, provides no information or details whatsoever as to how Plaintiff intends to prove that Defendant as opposed to someone else having access to his internet service committed a volitional act of copyright infringement. Accordingly, Plaintiff's claim of direct infringement is  based on the assumption that Defendant is the ***actual*** person who utilized the internet account for the aforementioned acts. Similarly, the Feiser Declaration fails to provide any information demonstrating Mr. Roy's knowledge or awareness of what was occurring over his internet account. Without any additional information Plaintiff is unable to show that he materially contributed to infringing conduct of another – a necessary requirement for contributory infringement.

---

[1] Plaintiff alleges that fifteen of its registered works (i.e. Carlie Beautiful Blowjob, Carlie Bit Toy Orgasm. Carlie Leila Strawberries and Wine, Daddy's Office, Just the Two of Us, Kat Translucence, Katka Cum Like Crazy, Katka Sweet Surprise, Kristen Girl Next Door, Leila Sex on the Beach, Megan Morning Bath, Mina's Fantasy, The Girl in My Shower, Tiffany Teenagers In Love, Tori The Endless Orgasm) were "available" for digital download and/or reproduction using a torrent software program known as Siterip. (Plaintiff's Complaint ¶ 2)

Perhaps more troubling is the fact that Defendant has failed to conduct any further investigation in order to uncover additional evidence to substantiate its claims. Throughout the course of discovery, Mr. Roy has provided an explanation that he was merely the accountholder and did not engage in any act of infringement nor was he aware of anyone else using his account to do so. (Exhibit 2; Defendants Verified Interrogatory Answers)  In addition, Defendant has provided Plaintiff with a sworn affidavit supporting his claims of non-involvement. In particular, Mr. Roy testified he maintained a wireless internet system that was accessible by other individuals including friends and  family members.  (Exhibit 1; Affidavit of Jeffrey Roy, ¶ 4) Mr. Roy attested that he had never utilized the referenced file exchange program nor did he know that anyone else was using his internet connection to facilitate the download or exchange of Plaintiff's copyrighted works. (Exhibit 1; ¶ 4) Plaintiff had the opportunity to examine both Mr. Roy and his computer in order verify the accuracy of his statements and to obtain additional information necessary to support their claims. Shockingly, Plaintiff failed to do so and has taken the position that they have no interest in allowing Mr. Roy (and the thousands of similarly situated Defendants across the country) to prove their lack of involvement. Instead, they insist that the only way out is to pay their settlement demand – regardless of the insufficiency of their proofs. Despite their knowledge and awareness of Mr. Roy's exculpatory explanation, Plaintiff has failed to conduct any further investigation to substantiate their claims.

Plaintiff has been previously warned by at least one court that efforts to extract settlements from individuals who have provided exculpatory evidence (coupled with the failure to conduct any further investigation) is inappropriate, abusive and unfair. In re BitTorrent Adult Film Copyright Infringement Cases, 2012 U.S. Dist. LEXIS 61447 at *19 (E.D.N.Y. 2012) (noting that "plaintiffs have employed abusive litigations tactics to extract settlements from John

Doe defendants"). Indeed, the court went so far as to describe Plaintiff's justifications for such tactics as "rambling" and "farcical." Id. at n 7. More on point, the court characterized Plaintiff's the failure to dismiss an action where the defendant offered access to the defendant's computers and provided an affidavit of innocence (the exact same situation in Mr. Roy's case)  as an affront to the judicial system. *c.f.* Id. at 28.

## II.    FACTUAL BACKGROUND

On June 14, 2012, Plaintiff filed a complaint against seven unidentified defendants (i.e. John Does 1-7) alleging acts of copyright infringement based on their use of a BitTorrent file sharing protocol program. *(Plaintiff's Original Complaint ¶¶ 19-29)* On June 25, 2012, Plaintiff filed its Motion for Leave to Serve A Third-Party Subpoena Prior to A Rule 26(f) Conference. In its motion, Plaintiff's asserted that the subpoenas were necessary so that Plaintiff may learn the actual identity of the alleged infringers who were only known by an internet protocol address. *(Plaintiff's Original Complaint ¶¶ 19-29)*

On September 13, 2012, the court granted Plaintiff's request to serve a third-party subpoena upon the internet service provider for John Doe 1 and severed the remaining defendants from the instant action. (DE No. 10, 11) On August 14, 2012 counsel for Plaintiff served a third-party subpoena on Charter Communications, Inc. ("Charter") seeking the name and address of the registered accountholder for the internet address 24.177.168.98 on May 12, 2012.. In response to the subpoena, Charter produced records and information identifying Jeffery Roy as the registered accountholder for the IP address. On October 19, 2012,Plaintiff amended their complaint identifying Mr. Roy as the Defendant. Plaintiff asserts that Mr. Roy utilized a BitTorrent software program to download and/or distribute certain adult content videos. *(Plaintiff's Original Complaint ¶¶ 49, 56)* Alternatively, asserts that by participating in the BitTorrrent "swarm" Mr. Roy materially contributed to the infringing conduct of at least seven

other individuals. *(Plaintiff's Original Complaint ¶58)*

On January 3, 2013, the court issued its case management order allowing the parties to engage in discovery up and until August 31, 2013. (Docket Entry No. 24) In its Rule 26 Disclosures,  Defendant provided evidence (i.e. signed affidavit attesting that (1) he maintained a wireless internet router with Charter which allowed other individuals access to his internet service; (2) he had no reason to believe that  anyone accessing his internet services was doing anything illegal and/or actionable; (3) does not know who if anyone used his internet account to download or exchange any of Plaintiff's copyrighted works; (4) has never downloaded or exchanged any of Plaintiff's copyrighted works; (5) has investigated his computer and does not believe that the necessary software to facilitate a download or exchange of copyrighted material is on his computer. (Exhibit 1 - Affidavit of Jeffrey Roy)

On January 14, 2013, Defendant served upon Plaintiff a series of Request for Admission upon Plaintiff's counsel.  The requests initiated by Defendant sought admissions from Plaintiff that the identification of Mr. Roy as the internet accountholder on the date of detection did not necessarily link him to the aforementioned acts of infringement. These requests were consistent with the fact that several courts across the country have taken judicial notice of the fact that an IP address does not necessarily mean that the accountholder was the actual infringer. The purpose of the requests were to narrow the scope of the factual issues and force Plaintiff to admit that a necessary element of their case was to establish sufficient evidence linking Mr. Roy to acts of infringement either through his direct participation or by virtue of his material participation.

By virtue of their failure to respond to Defendants request for admissions, Plaintiff admits that (1) the ISP to which the Defendant subscribed may not correlate to the actual identity of the individual who illegally downloaded and/or exchanged the copyrighted movies owned by

Plaintiffs (2) other individuals may have been using Defendant's internet account to download and/or exchange the copyrighted materials referenced in the complaint; (3) that upon reasonable investigation, they are unable to verify that Defendant did, in fact, contribute either directly or indirectly in allowing the exchange of copyrighted material as alleged in the Complaint. (Exhibit 3; Unanswered Request for Admission) The failure to respond to the admissions was not dispositive of the factual issues relative to Plaintiffs claims, but required that they provide additional evidence (other than Mr. Roy's account information)  to substantiate that he participated in the acts of infringement.

On March 27, 2013, Mr. Roy served copies of his verified answers to Plaintiff's interrogatory question along with his responses to their request for production of documents. In his verified interrogatory answers (attached hereto as exhibit 1) Mr. Roy (1) identified all computer devices in his household that had access to his internet connection; (2) denied ever using or installing the BitTorrent file sharing program on any computer device in his custody or control; (3) denied downloading any of the copyrighted materials identified in Plaintiff's complaint; (4) was unaware of any one else engaging in any acts of infringement over his internet connection. Mr. Roy offered to produce any of his computer devices for inspection – subject to an appropriate protective order.

During the course of Discovery Plaintiff had the opportunity to examine Mr. Roy and his computer to see if the BitTorrent program and infringing works were installed on his computer or deleted from his computer. The ability to further investigate the basis of their claims is critical in that they would have been able to either confirm or refute Mr. Roy's explanation of non-infringement. Although Mr. Roy is confident that any additional information would have yielded information corroborating his explanation of non-infringement, Plaintiff had the opportunity to

5

try and develop a factual basis for their claims and failed to do so.

Discovery is currently closed, and Plaintiff has failed to present any evidence sufficient to establish a material fact that (1) Mr. Roy utilized the BitTorrent program, (2) that he download and/or exchanged of their copyrighted material; (2) or assisted other in doing so with knowledge and awareness of their actions. In fact, the un-rebutted evidence demonstrates that Mr. Roy (1) did not utilize the BitTorrent program; (2) did not download or exchange any of Plaintiff's copyrighted materials; (3) was unaware of anyone else downloading and/or exchanging any of Plaintiff's copyrighted materials through his internet account. (Exhibit 1 & 2)

III.  STANDARD OF REVIEW

Rule 56 (c) of the Federal Rules of Civil Procedure mandate the entry of summary judgment when "the pleadings, depositions, answer to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." When determining whether there is a genuine issue for trial, "the inferences to be drawn from the underlying facts . . . must be viewed in the light most favorable to the party opposing the motion." United States v. Diebold, Inc., 369 U.S. 654, 655, 82 S. Ct. 993, 994, 8 L. Ed. 2d 176 (1962); Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587, 106 S. Ct. 1348, 1356, 89 L. Ed. 2d 538 (1986). Rule 56(e) "requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" Celotex Corp. v. Catrett, 477 U.S. 317, 324, 106 S. Ct. 2548, 2553, 91 L. Ed. 2d 265 (1986) (quoting Fed. R. Civ. Pro. 56(e)).

IV.  LAW AND ARGUMENT

In order to set forth a prima facie claim of copyright infringement Plaintiff must show

ownership of a valid copyright and actual violation by the defendant of one or more exclusive rights set forth in 17 U.S.C. § 106. *See* <u>Feist Pubs., Inc.</u>, v. <u>Rural Tel. Serv. Co., Inc.</u>, 499 U.S. 340, 361 (1991). Plaintiff must provide sufficient factual support to allow the Court to draw the inference that the defendant is liable for the alleged misconduct.  Here, Plaintiff relies on the information linking Defendant's internet address (not Mr. Roy himself) to the aforementioned acts of infringement.  Accordingly, Plaintiff assumes that anything that occurred on Mr. Roy's account was done by him or under his direction.

### A. PLAINTIFF HAS FAILED TO PRODUCE EVIDENCE SUFFICIENT TO RAISE A QUESTION OF MATERIAL FACT LINKING DEFENDANT TO THE ALLEGED ACTS OF COPYRIGHT INFRINGEMENT

In the initial John Doe action before the court, Plaintiff represented that leave to conduct early discovery was necessary to identify the ***actual*** infringer who they intended to name and serve. (*Plaintiff's Memorandum of Law In Support of Motion for Expedited Discovery, p. 3*) Plaintiff's prior motion explicitly stated that that the identification of the internet account holder would yield information as to the identity of the ***<u>actual</u>*** infringer. During the course of discovery, Mr. Roy provided Plaintiff with information attesting rebutting Plaintiff's claim that he was the actual infringer. Notwithstanding, their knowledge and awareness of Mr. Roy's explanation, Plaintiff have failed to perform any investigation or discovery to support their claims.

Having decided not to pursue any additional investigation or discovery, Plaintiff's appear content to rely on the assumption that as the accountholder he must have been  involved in the underlying acts of infringement. However their position is unsupported and contrary to the testimony of their own computer technicians. In the declaration attached to their complaint Plaintiff admits that  its computer investigators have only been able to identify "Defendant's IP Address" (as opposed to Defendant himself) as being involved in the the "swarm that was

7

allegedly distributing Plaintiff's works. *(Plaintiff's Complaint ¶ 37)* Plaintiff recognizes and concedes that other individuals having access to Defendant's computer may have been responsible for the alleged acts of infringement. Accordingly, Plaintiff's claims that Defendant (as opposed to someone else having access to his internet address) was engaged in copyright infringement is merely a guess.

As a factual matter, any customer of an ISP -- such as the moving Defendant – who connects their computer to the internet via the ISP is assigned an Internet Protocol (IP) address. In addition to the customer's IP address, the ISP's network is also assigned its own IP address. *See genera*lly <u>LVRC Holdings</u> v. <u>Brekka</u>, 581 F.3rd 1127, 1130 (9th Cir. 2009). An "IP address is a series of numbers associated with a server or website, and it is used to route traffic to the proper destination on the Internet." <u>Kirch</u> v. <u>Embarq Mgmt. Co.</u>, 2011 U.S. Dist. LEXIS 92701 *10 (D. Kan. Aug. 19, 2011). More specifically, an IP address identifies only the location at which one of any number of computer devices may be deployed, especially when used with a wireless router as in the instant action. As a result, one court noted that, "[b]ecause it is common today for people to use routers to share one internet connection between multiple computers, the subscriber associated with the IP address may not necessarily be the alleged infringer" [Emphasis Added] <u>Bubble Gum Productions, LLC</u> v. <u>Does 1-80</u>, 2012 WL 2953309 at *4 (S.D.Fla. Jul. 19, 2012).

More on point, the United States District Court for the Eastern District of New York has already addressed an identical case involving the current Plaintiff, Malibu Media, LLC, the erroneous assumption that an internet subscriber identified only by an IP address assigned to their account is an infringer holding that:

> [T]he assumption that the person who pays for Internet access at a given location
> is the same individual who allegedly downloaded a single sexually explicit film is

tenuous, and one that has grown more so over time. An IP address provides only the location at which one of any number of computer devices may be deployed, much like a telephone number can be used for any number of telephones . . .Thus, it is no more likely that the subscriber to an IP address carried out a particular computer function — here the purported illegal downloading of a single pornographic film — than to say an individual who pays the telephone bill made a specific telephone call.

In re BitTorrent Adult Film Copyright Infringement Cases, 2012 U.S. Dist. LEXIS 61447, at *9 (E.D.N.Y. 2012); see also Next Phase Distrib., Inc. v. Does 1-27, 2012 U.S. Dist. LEXIS 107648, at *14-15 (S.D.N.Y. July 31, 2012)(same). The In re BitTorrent court further advised Plaintiff, Malibu Media, LLC, and its counsel in unambiguous terms that:

[It was] concerned about the possibility that many of the names and addresses produced in response to Plaintiff's discovery request will not, in fact, be those of the individuals who downloaded "My Little Panties # 2." The risk is not purely speculative; Plaintiff's counsel estimated that 30% of the names turned over by ISPs are not those of individuals who actually downloaded or shared copyrighted material. Counsel stated that the true offender is often the "teenaged son ... or the boyfriend if it's a lady." Alternatively, the perpetrator might turn out to be a neighbor in an apartment building that uses shared IP addresses or a dormitory that uses shared wireless networks. This risk of false positives gives rise to the potential for coercing unjust settlements from innocent defendants such as individuals who want to avoid the embarrassment of having their names publicly associated with allegations of illegally downloading "My Little Panties # 2."

Id. (citing Digital Sin, Inc. v. Does 1-176, 2012 U.S. Dist. LEXIS 10803, at *3 (S.D.N.Y. 2012)) (citations omitted).

The In Re Bittorrent the court flatly recognized the linking an actual person to an IP address was speculative noting that "most, if not all, of the IP addresses will actually reflect a wireless router or other networking device, meaning that while the ISPs will provide the name of its subscriber, the alleged infringer could be the subscriber, a member of his or her family, an employee, invitee, neighbor or interloper." Id.

Contrary to Plaintiff's admittedly self-serving "guess," in identical Bittorrent cases across similar plaintiffs have even admitted the fact that an IP address does not, and cannot identify an

infringer. See <u>SBO Pictures, Inc.</u> v. <u>Does 1-3036</u>, 2011 WL 6002620, at *3 (N.D. Cal. 2011)("the ISP subscribers to whom a certain IP address was assigned may not be the same person who used the Internet connection for illicit purposes."); <u>Third Degree Films</u> v. <u>Doe</u>, 2011 U.S. Dist. LEXIS 128030, *9 (N.D. Cal. 2011)(ISP subscriber information "does not tell Plaintiff who illegally downloaded Plaintiff's works."); <u>Pacific Century Intern. Ltd.</u>, v. <u>Does 1-101</u>, 2011 2011 U.S. Dist. LEXIS 124518, at *2 (N.D. Cal. 2011)(noting that Plaintiff disavowed previous representations to the court that the requested discovery of subscriber's information based on an IP address would allow it to identify Defendants); <u>Digital Sin, Inc.</u> v. <u>Does 1-5698</u>, 2011 WL 5362068, at *4 (N.D. Cal. Nov. 4, 2011)(ISP subscribers may not be the individuals who infringed upon Digital Sin's copyright); see also e.g. <u>In re: Ingenuity 13 LLC</u>, No. 2:11-mc-0084-JAM-DAD, Order [Doc. No. 24], at *10 (E.D. Cal. 2012) ("the identities of the subscribers associated with the identified IP addresses … would not reveal who actually downloaded petitioner's work, since the subscriber's internet connection could have been used by another person at the subscriber's location, or by an unknown party who obtained access to the subscriber's internet connection without authorization"); <u>In re Ingenuity 13 LLC</u>, 2012 U.S. Dist. LEXIS 38647, *18 (E.D. Cal. Mar. 20, 2012)( (ISP subscriber "information alone would not reveal who actually downloaded petitioner's work, since the subscriber's internet connection could have been used by another person at the subscriber's location, or by an unknown party who obtained access to the subscriber's internet connection without authorization" and that petitioner "would be required to engage in further pre-filing discovery to determine if a viable cause of action existed against any of the identified subscribers."); <u>Hard Drive Productions, Inc</u> v. <u>Does 1-130</u>, 2011 WL 553960, at *2 (N.D. Cal. 2011)("Plaintiff concedes, in some cases the Subscriber and the Doe Defendant will not be the same individual"); <u>VPR Internationale</u> v. <u>Does</u>

1-1017, 2011 U.S. Dist. LEXIS 64656 at *4 (C.D. Ill. Apr. 29, 2011) (noting that "[t]he infringer might be the subscriber, someone in the subscriber's household, a visitor with her laptop, a neighbor, or someone parked on the street at any given moment."). As Judge Martinez noted in Malibu Media, LLC v. Felitti:

> [S]ubscriber John Doe 1 could be an innocent parent whose internet access was abused by her minor child, while John Doe 2 might share a computer with a roommate who infringed Plaintiffs' works. John Does 3 through 203 could be thieves, just as Plaintiffs believe."

2012 U.S. Dist. LEXIS 103393, at *9-10 (D. Colo. July 25, 2012)(quoting Third Degree Films v. Does 1-3577, 2011 U.S. Dist. LEXIS 128030, at *4 (N.D. Cal. Nov. 4, 2011)). Judge Martinez even went so far as to note the effects of this disconnect between internet subscriber and actual infringer disclosing that:

> The Magistrate Judge assigned to all BitTorrent cases has noted that defendants are coming forward with a multitude of different defenses. Some are businesses alleging that a patron was the unlawful downloader. Others are elderly grandparents that do not even know what BitTorrent is or how to download a file from the internet; they may have owned the computer associated with the unique IP address, but have no knowledge of whether someone in their household may have used the BitTorrent protocol for the purposes alleged in the complaint."

Despite the overwhelming and specific findings and admissions to the contrary, Plaintiff claims are based upon the fact that Mr. Roy's name is on the internet bill. Thus, Plaintiff's support for its claims (without additional evidence) is merely a guess. Accordingly, Plaintiff has failed to carry its burden requiring dismissal of its case with prejudice.

      B.    **PLAINTIFF HAS FAILED TO PRODUCE EVIDENCE SUFFICIENT TO RAISE A QUESTION OF MATERIAL FACT DEMONSTRATING THAT DEFENDANT MATERIALLY CONTRIBUTED TO THE CONDUCT OF ANOTHER INDIVIDUALS ACTS OF INFRINGEMENT**

In support of its claims for contributory infringement, Plaintiff appears content to rely on the assumption that he materially participated in the aforementioned acts of infringement because the activity occurred on a computer that was located in his home. However, secondary theories of

copyright infringement require a showing that the defendant materially contributed to the infringing conduct of another with ***knowledge*** of the infringement. <u>A&M Records, Inc</u>. v. <u>Napster, Inc.</u>, 239 F. 3d 1004, 1019 (9th Cir. 2001); <u>Fonovisa, Inc</u>. v. <u>Cherry Auction, Inc.</u>, 76 F. 3d 259, 264 (9th Cir. 1996) <u>Gershwin Publishing Corp</u>. v. <u>Columbia Artists Mgmt., Inc.</u>, 443 F.2d 1159, 1162 (2nd Cir. 1971) Within the context of a computer system owner or operator, evidence of actual knowledge of specific acts of infringement is required for contributory copyright infringement. <u>Religious Tech Ctr</u>. v. <u>Netcom On-Line Communications Servs.</u>, Inc. 907 F. Supp. 1361, 1373 (N.D. Cal 1995) <u>Chubby, Inc</u>. v. <u>Compuserve, Inc.</u>, 776 F. Supp. 135, 141 (S.D.N.Y. 1991) Similarly, to establish such a claim of vicarious copyright infringement, a plaintiff must show that the defendant profited or obtained some other financial benefit from the infringing activity. <u>Fonovisa</u>, <u>supra</u> at 262, <u>Gershwin</u>, <u>supra</u> at 1162, see also <u>Polygram Int'l Publ'g, Inc. v. Nevada/TIG, Inc.</u>, 855 F. Supp. 1314, 1325 (D. Mass 1994) In the present case, the so-called evidence does not provide any support for such secondary theories of liability. In fact, the only support for Plaintiff's claim of contributory infringement is that the activity occurred on Mr. Roy's internet account. In the present case, Mr. Roy has offered evidence (verified interrogatory answers and signed affidavit) attesting that he did not participate in any acts of infringement and was unaware of any acts of infringement occurring over his internet connection. Without additional information showing Mr. Roy's awareness and participation, Plaintiff cannot meet is burden.

C. **PLAINTIFF HAS FAILED TO PRODUCE EVIDENCE SUFFICIENT DEFENDANT COMMITTED A VOLITIONAL ACT OF COPYRGHT INFRINGEMENT**

Plaintiff must provide facts sufficient to allow the Court to draw the inference that the Defendant violated one or more exclusive rights set forth in 17 U.S.C. §106. See, <u>Feist</u>, <u>supra</u>. 499 U.S. at 361. While copyright is a strict liability statute, many courts have correctly recognized that inherent in any such violation of a §106 right, some element of volition or

causation must exist. See <u>Religious Tech. Ctr</u> v. <u>Netcom On-Line Commc'n Servs.</u>, Inc., 907 F. Supp. 1361, 1369-70 (N.D. Cal. 1995) (granting motion to dismiss where Plaintiff failed to plead any plausible facts that Defendant committed a volitional act of copyright infringement.); see also <u>Field</u> v. <u>Google, Inc</u>., 412 F. Supp. 2d 1106 (D. Nev. 2006) (holding that a plaintiff must show volitional conduct on defendant's part to support finding of direct copyright infringement); (<u>Cartoon Network LP</u> v. <u>CSC Holdings, Inc</u>., 536 F.3d 121 (2d Cir. 2008)( holding that under section §106 of the Copyright Act a person must "engage in volitional conduct - specifically, the act constituting infringement - to become a direct infringer"). In order demonstrate an issue of material fact, Plaintiff is required to demonstrate some evidence that Mr. Roy actively and consciously initiated the necessary steps to facilitate the aforementioned acts of infringement (i.e. (i.e. installation of torrent program on his computer, accessing the identified internet siterip location, participation in file "swarm," etc.)   Plaintiff's inference that the identity of Defendant's IP address is tantamount to Defendant himself is legally insufficient.

### D.   PLAINTIFF'S SUPPORTING DECLARATION IS INSUFFICIENT TO LINK DEFENDANT TO THE ALLEGED ACTS OF INFRINGEMENT

Plaintiff relies on a series of conclusory statements that Defendant is the person who engaged in the infringing activity because the activities occurred on his IP are directly attributable to him. As noted above, the declaration of Tobias Fieser referenced in Plaintiff's Complaint fails support this conclusion. Mr. Feiser's declaration merely states that  Defendant's IP address was utilized in the participant "swarm" used to distribute its copyrighted works. Admittedly, Defendant's IP address does not specifically link the activities that occurred on his account with the actual actions of Defendant himself.[2] While Mr. Feiser's declaration (and

---

[2] It is also commonly know that firms such as IPP, Ltd., have a direct financial interest in the outcome of case where they provide evidence undermining the credibility of Mr. Feiser's entire declaration. See e.g. <u>Metso Minerals, Inc.</u> v. <u>Powerscreen Int'l Distrib. Ltd.</u>, 833 F. Supp. 2d 282, 316 (E.D.N.Y. 2011) (Court determined declarant lacked

allegations in Plaintiff's complaint) generally describe the procedure for collecting IP addresses, they include no such statement capable of showing that the activity occurring on one's internet account must therefore be the result of Defendant's own volitional acts. For example, the Feiser Declaration provides no basis whatsoever to support the Plaintiff's conclusion that Defendant as the "subscriber of the IP address" was the actual individual who participated "swarm" used to distribute its copyrighted works

First, the Feiser Declaration states that an "IP address is a unique numerical identifier that is automatically assigned to an internet user by the user's Internet Service Provider ("ISP"). (Feiser Decl. ¶7). As noted above, the purpose of an IP address is to route traffic efficiently through the network. IP addresses only specify the locations of the source and destination nodes in the topology of the routing system. As such, as an IP address, as described above, is not assigned to an "internet user" but merely an internet access point such as a wireless router. In Re: BitTorrent, 2012 U.S. Dist. LEXIS 61447 at *13. ("[m]ost, if not all, of the IP addresses will actually reflect a wireless router or other networking device). Furthermore, as detailed above, an IP address *cannot* identify a computer being used nor the actual user. Id. at *9. The Feiser Declaration later concedes that that the ISP can only correlate an IP address to "the subscriber of the internet service." (Feiser Declaration ¶9). Plaintiffs link between an internet subscriber and an actual infringer/user -- if such a person even exists – is nothing more than a speculative assumption and cannot be the basis for establishing an issue of material fact..

Second, The Feiser Declaration goes onto to make the unsupported statement that a "computer using the IP address assigned to Defendant" participated in the alleged infringing activity, (Id. at ¶19), and that the ISP can "identity the name…of the Defendant." (Id. at ¶22). Again, these statements are insufficient to link the detected infringement to Defendant. An IP

credibility due to direct financial interest in the action).

address can neither identify an individual nor a specific computer, let alone Defendant's computer, or any specific computer accessing the internet. See, In Re: BitTorrent, 2012 U.S. Dist. LEXIS 61447 at *13. ("Most, if not all, of the IP addresses will actually reflect a wireless router or other networking device, meaning that while the ISPs (sic) will provide the name of its subscriber, the alleged infringer could be the subscriber, a member of his or her family, an employee, invitee, neighbor or interloper.").

There exists no reasonable good faith basis upon which Mr. Feiser or Plaintiff could state that the Defendant, based on an IP address alone infringed on anyone's work(s). In an identical Bittorrent case, two separate declarations of qualified computer science professionals (attached collectively as exhibit 4) confirm that there is no way that a person in Mr. Feiser's position can uncover the identity of the actual infringer based solely on the identification of the registered owner of the account. (Exhibit 4; Decl. Stephen Hendricks ¶10). Indeed, the declaration confirms that it would be impossible to make any such determination. (Exhibit 4; Decl. Stephen Hendricks ¶10; Decl. John Simek ¶6).[3]  Such evidence cannot support Plaintiff's claims.

Third, the Feiser Declaration's conclusory and unsupported statements that the Defendant: (1) committed an act of infringement, (2) using his computer; and that he (3) can be identified fails as a matter of fact. For example, a subscriber can be misidentified in multiple ways as an infringer without participating in any infringing behavior, including at least:

1.   Some members of a swarm simply and automatically pass on routing information to other clients, and never possess even a bit of the movie file;[4]

2.   A client requesting a download can substitute another IP address for its own to a

---

[3]Similar to the Defendant referenced in both the Hendricks and Simek declarations, Defendant's ISP is Comcast.

[4]Sengupta, S. et al., Peer-to-Peer Streaming Capacity, IEEE Transactions on Information Theory, Vol. 57, Issue 8, pp. 5072-5087, at 5073 (Prof. Helmut Bolcski, ed., 2011) ("A [BitTorrent] user may be the source, or a receiver, or a helper that serves only as a relay.").

Bittorrent tracker;[5]

3.    A user can misreport its IP address when uploading a torrent file. A user in the network path between the user monitoring IP address traffic and the Bittorrent tracker can implicate another IP address;[6]

4.    Malware on a computer can host and distribute copyrighted content without knowledge or consent;[7]

5.    There are reliability issues with using IP addresses and timestamps to identify the correct party;[8]

6.    If a subscriber has dynamic IP addressing through its website host, it is sharing an IP address with several other subscribers;[9]

7.    Anyone with wireless capability can use a subscriber's "wi-fi" network to access the Internet, giving the impression that it is the subscriber who is infringing;[10] or

8.    Human error by IPP, Ltd, Plaintiff and/or the ISP among others.

All of the above footnoted information is publically available and may be considered by

this Court. See Grynberg v. Koch Gateway Pipeline Co., 390 F.3d 1276, 1279 n.1 (10th Cir.

2004)(in ruling on a Rule 12(b)(6) motion to dismiss, a court may properly consider facts subject

---

[5]Michael Piatek et al., Challenges and Directions for Monitoring P2P File Sharing Networks—or—Why My Printer Received a DMCA Takedown Notice, 3 (2008), http://dmca.cs.washington.edu/uwcse_dmca_tr.pdf See also, "IP address spoofing" http://en.wikipedia.org/wiki/IP_address_spoofing (Last visited August 2, 2012) (the term IP address "spoofing" refers to the creation of a forged IP address with the purpose of concealing the user's identity or impersonating another computing system.). Specifically, the article concludes: "[W]e find that it is possible for a malicious user (or buggy software) to implicate (frame) seemingly any network endpoint in the sharing of copyrighted materials. We have applied these techniques to frame networked printers, a wireless (non-NAT) access point, and an innocent desktop computer, all of which have since received DMCA takedown notices but none of which actually participated in any P2P networks.
[6]Ibid.
[7]Ibid.
[8]Ibid. ("When IP addresses are assigned dynamically, reassignment of an IP address from an infringing user to an innocent user can cause the behavior of the infringing user to be attributed to the innocent user. Because the monitoring client (copyright holder) records information from the tracker of the Bittorrent client, the information can quickly become inaccurate and will not implicate the correct user.")
[9]"Web hosting service" http://en.wikipedia.org/wiki/Web_hosting_service (Last visited August 2, 2012).
[10]Carolyn Thompson writes in an MSNBC article of a raid by federal agents on a home that was linked to downloaded child pornography. The identity and location of the subscriber were provided by the ISP. The desktop computer, iPhones, and iPads of the homeowner and his wife were seized in the raid. Federal agents returned the equipment after determining that no one at the home had downloaded the illegal material. Agents eventually traced the downloads to a neighbor who had used multiple IP subscribers' Wi-Fi connections (including a secure connection from the State University of New York). See Carolyn Thompson, Bizarre Pornography Raid Underscores Wi-Fi Privacy Risks www.msnbc.msn.com/id/42740201/ns/technology_and_sciencewireless/ (April 15, 2011)

to judicial notice such as court files and matters of public record)(citations omitted).

Such facts do not exist in a vacuum. By defining Mr. Roy as an ISP subscriber who was assigned to a certain IP addresses, instead of the actual Internet users who allegedly engaged infringing activity, Plaintiff's methodology has the potential to draw numerous innocent internet users into the litigation." Hard Drive Prods., Inc. v. Does 1-130, No. C-11-3826 DMR, 2011 U.S. Dist. LEXIS 132449, at *6 (N.D. Cal. Nov. 16, 2011)).

Recent court decisions have expressed strong concerns along these lines about the coercive nature of copyright claims based on Bittorrent identification and especially involving pornographic material. In re Bittorrent, supra, 2012 WL 1570765 at *10 ("This concern, and its potential impact on social and economic relationships, could compel a defendant entirely innocent of the alleged conduct to enter an extortionate settlement"); SBO Pictures, Inc. v. Does 1-3036, 2011 U.S. Dist. LEXIS 137361, at *11 (N.D. Cal. Nov. 30, 2011) (a defendant – "whether guilty of copyright infringement or not -- would then have to decide whether to pay money to retain legal assistance to fight the claim that he or she illegally downloaded sexually explicit materials, or pay the money demanded. This creates great potential for a coercive and unjust 'settlement'"); *See also* Zero Tolerance Entertainment, Inc. v. Does 1-45, 2012 WL 2044593 at *1 (S.D.N.Y. Jun. 6, 2012) (discovery of ISP subscriber information "has been used repeatedly in cases such as this one to harass and demand of defendants quick settlement payments, regardless of their liability"). Defendant does not argue that Plaintiff has no right to enforce its valid copyrights in accordance with the laws and procedures of this Court, however, proof of such claims must comport with the evidentiary standards of those same laws. Since it has not, its claims must be dismissed.

E.    COUNSEL IN IDENTICAL CASES HAVE ADMITTED THAT THERE
      EXISTS A SIGNIFICANT RISK OF MISIDENTIFICATION

The increasing popularity of wireless routers through which unknown interlopers can access subscribers' internet accounts, In re Bittorrent, supra, 2012 WL 1570765 at *3, makes the allegation that the subscribers committed the infringement in this case all the more speculative. The Court should not close its eyes to the significant risk that people innocent of any copyright infringement are being falsely identified as "Defendants" and swept up in such BitTorrent lawsuits. Specifically, in an age when most homes have routers and wireless networks and multiple computers share a single IP address "there is a reasonable likelihood that the [defendants] may have had no involvement in the alleged illegal downloading that has been linked to his or her IP address." Malibu Media, LLC v. John Does 1-11, 2012 U.S. Dist. LEXIS 94648 (D.D.C. July 10, 2012).

Various plaintiffs in identical Bittorrent cases have even admitted on the record that ISP subscriber information is insufficient to identify and name an alleged infringer. Indeed, as one judge observed in another of identical Bittorrent case, plaintiff's counsel admitted in open court that:

> 30% of the names turned over by the ISP's are not those of the individuals who actually downloaded or shared copyrighted material.

Digital Sin, Inc. v. Does 1-176, 279 F.R.D. 229, 242 (S.D.N.Y. 2012) citing (1/17/12 Tr. at 16) (emphasis added); see also Pacific Century Intern. Ltd., v. Does 1-101, 2011 U.S. Dist. LEXIS 124518, *2 (N.D. Cal. 2011)(noting that Plaintiff disavowed previous representations to the court that the requested discovery would allow it to "fully identify" Defendants and further admitting that the discovery often will not reveal Defendants' identities); AF Holdings LLC v.Does 1-96, 2011 U.S. Dist. LEXIS 134655, at *11-12 (N.D. Cal. Nov. 22, 2011)(plaintiff conceded on the record that "the [ISP subscriber] information subpoenaed will merely reveal the name and

contact information of the subscriber to the Internet connection that was used to download the copyrighted work, but it will not reveal who actually downloaded the work and therefore who can be named as a defendant.")

Instructive also is <u>Boy Racer, Inc.</u> v. <u>Doe</u>, 2011 U.S. Dist. LEXIS 103550 (N.D. Cal. Sept. 13, 2011). Here the plaintiff in identical Bittorrent case admitted that its previous representation to the court that ISP subscriber information was not sufficient to "fully identify" a P2P network user suspected of violating the plaintiff's copyright was false and instead that still more discovery would be required to identify the actual infringer. Id. at *6-7. The Plaintiff in that case specifically stated on the record that:

> While Plaintiff has the identifying information of the subscriber, this does not tell Plaintiff who illegally downloaded Plaintiff's works, or, therefore, who Plaintiff will name as the Defendant in this case. It could be the Subscriber, or another member of his household, or any number of other individuals who had direct access to Subscribers network.

<u>Id</u>. Needless to say the <u>Boy Racer</u> court found this "turn of events troubling, to say the least." <u>Id</u> at *7-8.

Even more instructive for this Court, in another identical Bittorrent case, plaintiff's counsel, in seeking to address the Court's concern that it may be pursing and innocent internet subscribers admitted in court documents that it would require additional discovery before it could determine if the subscriber was in fact one in the same stating that:

> Although a subscriber and doe defendant will often be one-and-the-same, it can be the case that they are different people. In cases, such as the present action, where the subscriber completely refuses any form of communication with Plaintiff's counsel, limited additional discovery is often needed to confirm that the subscriber may be named as a Doe Defendant.

Further stating that:

> "[a]fter making its determination [through additional deposition discovery] as to the correct Defendant, Plaintiff will effectuate service."

<u>Hard Drive Prod's.</u> v. <u>Doe</u>, N.D. Cal. Case No. 22-1566, Status report filed by Brett Gibbs: Dkt. No. 29, 11/11/11). *See* Section III(c), <u>infra</u>. Here plaintiff's counsel, operating under nearly identical facts admits that in order to have a good faith basis to allege that an Internet subscriber is actually a Defendant; it needs to know more than that the person happens to pay the bill. <u>Id</u>.[11]

Such admissions provide further support that Plaintiff's unsupported "guess" that Defendant is the "most likely infringer" in this case is utterly speculative. Here Plaintiff admittedly does not know who actually committed the alleged infringement; 2) Plaintiff has failed to provide sufficient facts supporting an inference that the subscriber of the account is, in fact, the individual who actually uploaded or downloaded Plaintiff's movies; and 3) Plaintiff has failed to provide sufficient facts for holding an account subscriber liable for the allegedly infringing conduct of unknown others, even if such person(s) even existed.

F.    PLAINTIFF'S ALLEGATIONS ARE LIKELY UNSUPPORTABLE UNDER EVEN RULE 11

Given that Mr. Roy has provided sworn testimony as to his lack of involvement, Plaintiff assertion (without additional evidentiary support) that Defendant, as merely an internet subscriber is the "most likely infringer" is unsupportable under Fed. R. Civ. P. 11, let alone Fed. R. Civ. P. 56. Continuing to maintain an action against an internet subscriber who has affirmatively denied utilizing the necessary software or engaging in the underlying acts of infringement – without additional evidentiary basis for claiming that the subscribers actually committed the alleged infringement – likely violates Rule 11's requirement that "the factual contentions (i.e., that the defendant in this case was personally involved in uploading and

---

[11]These aforementioned admissions may be judicially noticed by this Court. *See* generally <u>St. Louis Baptist Temple</u> v. <u>FDIC</u>, 605 F. 2d 1169, 1171-1172 (10th Cir. 1979) ("federal courts, in appropriate circumstances, may take notice of proceedings in other courts, both within and without the federal judicial system, if those proceedings have a direct relation to matters at issue.").

downloading copyrighted material) have evidentiary support . . ." An attorney's signature on a motion or pleading means "that to the best of his or her knowledge, information, and belief there is good ground to support the contentions in the document, both in terms of what the law is or should be and in terms of the evidentiary support for the allegations, and that he or she is acting without an improper motivation." Charles Alan Wright & Arthur R. Miller, 5A *Fed. Prac. & Proc. Civ.* § 1335 (3d

ed.).

Plaintiff, Malibu Media, LLC, has been specifically warned in an identical Bittorrent case of the potential for sanctions for incorrectly identifying and naming defendants. *See* Malibu Media, LLC v. Doe, 2012 U.S. Dist. LEXIS 110668, at *6-7 (M.D. Fla. Aug. 7, 2012) ("The plaintiff shall inform each John Doe defendant of the potential for sanctions under Rule 11, Fed. R. Civ. P., if the John Doe defendant is incorrectly identified"); *see also* e.g. Hard Drive Productions v. Does 1-48, No. 11-9062, 2012 U.S. Dist. LEXIS 82927, 2012 WL 2196038, *6 (N.D. Ill. June 14, 2012) (warning plaintiff to consider Rule 11 before naming defendant who disputed that he had illegally downloaded pornographic movie). As another court recognized earlier this month, subscribers to internet accounts may be made defendants in these kinds of cases only "on the basis of their allegedly infringing activity, not due to their status as subscribers of the IP address utilized." Discount Video Center, Inc. v. Does 1-29, 2012 U.S. Dist. LEXIS 112518, at *5 n. 7 (D. Mass. Aug. 10, 2012).

Indeed, public records indicate that Plaintiff, Malibu Media, LLC, has filed approximately 355 lawsuits since February of this year, implicating what is believed to be approximately 5000 individuals or businesses. Assuming the generous estimate of a 30% false positive rate, the potential exists for approximately ~1700 defendants to be wrongful caught up

in such suits. Coupled with Plaintiff's consistent refusal to accept exculpatory evidence from Defendant -- and other similarly situated individuals as demonstrated in Exhibit A, supports a conclusion that Plaintiff's conclusory allegations lack evidentiary support and as such cannot rise above mere speculation warranting dismissal.

V.      CONCLUSION

Plaintiff's support for its claims against Defendant is premised on the mere possibility that he might have been the infringing individual. Such conjecture is insufficient under Rule 56. Plaintiff cannot just assert that defendant "is the most likely infringer" because the infringement occurred on his internet account. Without additional support for its claims the complaint must be dismissed. Defendant further requests that the Court retain jurisdiction as to the issue of awarding attorney's fees and costs, including imposition of sanctions under Fed. R. Civ. P. 11, and other bases.


Dated: September 30, 2013                              s/ John T. Hermann
                                                       JOHN T. HERMANN (P-52858)
                                                       Counsel for Defendant
                                                       2684 West Eleven Mile
                                                       Berkley, MI 48072
                                                       (248) 591-9291

## **CERTIFICATE OF ELECTRONIC SERVICE**

I hereby certify that I electronically filed the foregoing paper with the Clerk of the Court

with the ECF system, which will send notification of each filing to the following:

Paul J. Nicoletti, Esq.


Dated: September 30, 2013                     s/ John T. Hermann
                                              JOHN T. HERMANN (P-52858)
                                              Counsel for Defendant
                                              2684 West Eleven Mile
                                              Berkley, MI 48072
                                              (248) 591-9291