**UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF MICHIGAN**

| | | |
|---|---|---|
| MALIBU MEDIA, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action Case No.: 1:12-cv-00617-RJJ |
| | ) | |
| v. | ) | |
| | ) | |
| JEFFREY ROY, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT PURSUANT TO FED. R. CIV. P. 56**

**I.    INTRODUCTION**

All of the record evidence proves that Defendant committed the infringement. Accordingly, Defendant's Motion for Summary Judgment should not only be denied, Plaintiff should be granted summary judgment. To explain, Plaintiff's investigator, IPP International UG ("IPP"), logged Defendant's IP address infringing fifteen (15) of Plaintiff's copyrighted works by using the BitTorrent protocol to download and distribute a siterip of Plaintiff's movies. Charter Communications, Inc. ("Charter"), Defendant's Internet Service Provider ("ISP"), correlated the IP address to Defendant as the internet subscriber assigned the infringing IP address on the infringement dates. Defendant's wireless router was password protected. At the time of infringement, there were only two people residing in Defendant's home: Defendant and his wife. Finally, Defendant admits that the tool used to commit the infringement – a µTorrent BitTorrent client – was installed on a computer used within Defendant's home. In short, there are only two people who had the means and opportunity to commit the infringement. But, only Defendant had the means, *motive*, and opportunity. To wit: (1) the overwhelming majority of Plaintiff's subscribers are male; and (2) here the infringed movies have titles which are more

1

appealing to men.  *See* Declaration of Colette Field ("Field Decl."), attached hereto as Exhibit A, at ¶¶18, 46.   Further, no one is asserting Defendant's wife, Robin Roy, committed the infringement.  Therefore, on the record evidence, no reasonable jury could find that anyone other than Defendant committed the infringement.

For these reasons, explained more fully below, this Court should not only deny Defendant's Motion for Summary Judgment but also grant summary judgment in Plaintiff's favor.

## II.    UNDISPUTED FACTS

The following facts are undisputed:

1.    Malibu Media is the registered owner of the copyrights set forth on Exhibit B to the Amended Complaint [CM/ECF 13-2] (the "Copyrights-in-Suit"), which cover content released for sale by Malibu Media on its subscription based website, X-Art.com.  *See* Field Decl., at ¶ 46.

2.    By a large margin, Plaintiff's subscribers are male.  Field Decl., at ¶ 18.

3.    As set forth on Exhibit "A" to the Amended Complaint [CM/ECF 13-1], and Exhibit 1 attached to the Fieser Declaration, IPP established a TCP/IP connection with a computer (the "Infringer's Computer") using IP address 24.177.168.98 on May 21 and 22, 2012.  *See* Declaration of Tobias Fieser ("Fieser Decl."), attached hereto as Exhibit B, at ¶ 14.

4.    As set forth on Exhibits A and 1, the Infringer's Computer sent IPP pieces of computer files that correlate (as evidenced by identical cryptographic hash values) to copies of the works covered by the Copyrights-in-Suit set forth on Exhibit C to the Amended Complaint [CM/ECF 13-3].  Collectively these exhibits list the IP address, hash value of the works, file name, title, owner, and hit date/time for these transactions.  Fieser Decl., at ¶ 15.

2

5.      IPP's software also detected the type of BitTorrent client used by the infringer; in this case, µTorrent for Mac computers.  Fieser Decl., at ¶ 17, and Exhibit 1.

6.      Defendant's ISP, Charter, confirmed that its subscriber and account holder, Jeffrey Roy, who resides at 423 W. College Ave., Marquette, MI 49855, was assigned IP address 24.177.168.98 from March 8, 2012 until June 26, 2012.  *See* Charter Subpoena Response, attached hereto as Exhibit C.

7.      At all relevant times, only Defendant and his wife resided at the house when the infringement occurred.  *See* Defendant's Response and Objections to Plaintiff's Interrogatory Questions ("Interrog. Resp."), attached hereto as Exhibit D, at No. 8.

8.      At all relevant times, Defendant accessed the Internet at his residence using a Cisco Linksys E2000 wireless router (the "Router").  *See* Interrog. Resp., at No. 6.

9.      Defendant's Router was purchased January 17, 2011.  *See* Defendant's Response to Plaintiff's Request to Produce ("Req. to Prod."), attached hereto as Exhibit E, at No. 4, and receipt attached thereto.

10.     At all relevant times, Defendant's Router was password protected and encrypted. *See* Affidavit of Jeffrey Roy, CM/ECF 41-3, at ¶ 3.

11.     Defendant swore under oath that only the following individuals were provided with access to his wireless router during the last two years:

> Robin Roy, wife, 49 yrs old. 423 W. College Ave, M[arquette], MI
> Jeffrey Roy, 51 yrs old. 423 W. College Ave, M[arquette], MI
> Emma Roy, daughter, 21 years old, Front Street, M[arquette], MI
> Justin Roy, son, 24 years old, Denver, Colorado
> [F]amily members [have] visit[ed] the home over the past two years, Robin's parents and sisters.
> Emma has had her college friends over and they used our wireless connection.

Interrog. Resp., at No. 8.

12. Defendant's daughter does not reside in his home at 423 W. College Ave., Marquette, MI. Interrog. Resp., at No. 8, reproduced above.

13. "Defendant's son was living in Chicago . . . and not present" when the infringement occurred. Interrog. Resp., at No. 10.

14. Defendant admitted that a μTorrent BitTorrent client was installed on one or more of his computer devices. Interrog. Resp., at No. 15.

15. There are scores of BitTorrent clients. Field Decl., at ¶ 36, and Exhibit C attached thereto (List of Forty-Eight (48) Different BitTorrent Clients).

16. IPP detected the exact BitTorrent client used to commit the infringement that Defendant admits was on one of the computers in his household. Fieser Decl., at ¶ 17.

17. The nature of the BitTorrent protocol provides for continuous seeding and distributing of a file long after it has downloaded. Without stopping the program by physically un-checking the automatic seeding, an alleged infringer will seed and distribute a movie for an extended period of time. Fieser Decl., ¶ 19.

## III.    LEGAL STANDARD

Summary judgment is proper when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "In copyright infringement cases 'granting summary judgment, particularly in favor of a defendant, is a practice to be used sparingly[.]'" *Kohus v. Mariol*, 328 F.3d 848, 853 (6th Cir. 2003). On a motion for summary judgment, "[t]he evidence must be viewed in the light most favorable to the nonmoving party." *Figel v. Riley*, 2006 WL 3759797, at *1 (W.D. Mich. 2006) (denying motion for summary judgment by plaintiff) citing *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 251-52, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). And, "any direct evidence offered by the plaintiff in

response to a summary judgment motion must be accepted as true." *Muhammad v. Close*, 379 F.3d 413, 416 (6th Cir. 2004) citing *Adams v. Metiva,* 31 F.3d 375, 382 (6th Cir.1994).

### IV. THE COURT SHOULD DENY DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND INSTEAD GRANT SUMMARY JUDGMENT IN PLAINTIFF'S FAVOR

#### A. All of the Record Evidence Proves That the Infringement Emanated From a Computer Within Defendant's Residence

All of the record evidence proves that the infringement emanated from a computer within Defendant's residence. Defendant's ISP identified Defendant as the internet subscriber assigned the subject IP address on the days when the infringement occurred. Defendant does <u>not</u> contest the accuracy of the correlation. Defendant's Router was password protected. Only Defendant's wife, Robin Roy, and Defendant Jeffrey Roy were residing at the house on the dates of infringement. Defendant admits to having the exact same type of BitTorrent client on a computer in his home that was used to commit the infringement. *See* Undisp. Facts, at ¶ 5. Significantly, the infringement was not committed using any of the other forty-seven (47) or more types of BitTorrent clients that were <u>not</u> used by Defendant. In light of the foregoing, it is indisputable that the infringement emanated from a computer used within Defendant's residence.

#### B. All Record Evidence Demonstrates That Defendant Committed the Infringement

According to Defendant's own discovery responses, the only two residents of Defendant's home at 423 W. College Ave. who had access to Defendant's internet, are Defendant and his wife. To explain, both of Defendant's children live outside of his residence. The undisputed facts establish that Defendant's son "was living in Chicago at the time and [was] not present," (Interogg. Resp., at No. 10) and that his daughter lives on Front Street, and not 423 W. College Ave, where Defendant resides. *See* Interrog. Resp., at No. 8 ("Emma Roy, daughter,

21 years old, Front Street, [Marquette], MI.").   There is no testimony or evidence in the record

demonstrating that anyone other than Defendant and his wife were at Defendant's home on May

22, 2012.[1]

Neither Plaintiff nor Defendant maintains that Defendant's wife committed the alleged

infringement and there is no evidence to suggest as much.   By a large margin Plaintiff's

subscribers are male and here, the infringed movies have titles which are more appealing to men.

Undisp. Facts, ¶ 2.   Defendant is the only male resident of the household located at the address

identified by Charter in response to Plaintiff's subpoena and all record evidence makes clear that

Defendant committed the infringement.[2]

---

[1] Defendant speculates that visiting family or friends may have been at this house on May 22, but
he "has no specific knowledge or memory of each individual and/or person who was at his home
o[n] the Subject Day."  *See* Interrog. Resp., at No. 10.  Significantly, Defendant did not testify
that anyone actually was at his house.  Defendant's speculation is inadmissible under Fed. R.
Evid. 602 which requires "personal knowledge of the matter" to which a witness testifies.  *Id.*  At
trial, Defendant is barred from arguing speculation to the jury.  *See Samuel v. George
Weidemann Co.*, 295 F. 314, 316 (6th Cir. 1924) ("Juries cannot . . . base their verdict upon mere
speculation or conjecture.").  *See also Woods v. New York Cent. R. Co.*, 222 F.2d 551, 552 (6th
Cir. 1955) (affirming directed verdict holding that "Speculation cannot supply the place of
proof."); *Torno v. 2SI, LLC*, 2006 WL 1547506, at *3 (E.D. Mich. 2006) ("[Defendant]'s theory .
. . cannot be submitted to the jury because it would require speculation. There is no evidence to
support an inference that a different seat design would have absorbed enough Gs to prevent, or
reduce, Plaintiff's injuries.")

[2] Defendant's answers to Plaintiff's interrogatories claim that "Defendant was out of the house at
work between the hours of 7 a.m. and 7 p.m." on May 22, 2012.  *See* Interrog. Resp., at No. 10.
However, the infringement was logged on both May 21 and May 22 and it is a well-known fact
that the software which enables the BitTorrent protocol to work (a.k.a a "BitTorrent client")
continues to distribute data so long as the computer is on and the user did not instruct the client
to stop distributing data.  The nature of the BitTorrent protocol provides for continuous seeding
and distributing of a file long after it has downloaded.  Without stopping the program by
physically un-checking the automatic seeding, an alleged infringer will seed and distribute a
movie for an extended period of time.  Undisp. Facts, at ¶ 17.  Defendant proffered no evidence
that he disabled automatic seeding or disconnected from the swarm.  *See also e.g. Patrick
Collins, Inc. v. John Does 1-21*, 282 F.R.D. 161, 168 *report and recommendation adopted,* 286
F.R.D. 319 (E.D. Mich. 2012) ("the default setting is that each user automatically uploads each
piece to other peers at all times until the user affirmatively chooses to disable uploading, exits
the program or deletes the Torrent.  The fact that Plaintiff's investigator was able to download a

## V. CONCLUSION

Since all record evidence proves that Defendant committed the infringement, Defendant's Motion for Summary Judgment should be denied and instead, summary judgment should be granted in Plaintiff's favor.

Dated: November 11, 2013

Respectfully submitted,

NICOLETTI & ASSOCIATES, PLLC

By:     /s/ Paul J. Nicoletti
Paul J. Nicoletti, Esq. (P44419)
36880 Woodward Ave, Suite 100
Bloomfield Hills, MI 48304
Tel: (248) 203-7800
Fax: (248) 203-7801
E-Fax: (248) 928-7051
Email: paul@nicoletti-associates.com
*Attorneys for Plaintiff*

## CERTIFICATE OF SERVICE

I hereby certify that on November 11, 2013, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF and that service was perfected on all counsel of record and interested parties through this system.

By:     /s/ Paul J. Nicoletti

---

piece from each Defendant means that they did not inhibit uploading."); *Patrick Collins, Inc. v. John Does 1-28*, 2013 WL 359759, at *3 (E.D. Mich. 2013) (quoting from BitTorrent.org for the proposition that until one exits the program, a file will keep uploading.); *Malibu Media, LLC v. Reynolds*, 2013 WL 870618, at *3 (N.D. Ill. 2013) ("Th[e] file becomes an additional seed . . . and remains available to other peers as long as the user that is in possession of the file remains connected to the swarm through the Client Program."). Thus, even if Defendant was away from home for part of May 22, 2012, this fact is irrelevant.